SAMUEL S. ROBBINS *vs.* FANNY W. COFFING AND OTHERS, ADMINISTRATORS.

It is provided by Gen. Statutes, p. 388, sec. 6, that when a creditor of an estate not represented insolvent shall present his claim, within the time limited, to the executor or administrator, and he shall disallow it, such creditor shall be debarred of his claim if he shall not within four months thereafter commence a suit for its recovery. Held that, while such an estate is in settlement, this statute, and not the general statute of limitations, governs claims presented against it.

A claim that, under the general statute, would have been barred in six years from the time it accrued, was, before thus barred, duly presented against a solvent estate and allowed by the administrators, but the time for closing the settlement of the estate was extended by the court of probate, and the estate remained open and this claim unpaid for ten years. At the end of that time the administrators notified the creditor that they disallowed his claim on the ground that it was barred by the statute of limitations. The creditor within four months thereafter brought a suit against them upon the claim. Held that the claim was not barred.

[Argued May 9th—decided July 16th, 1884.]

CIVIL ACTION against the administrators of George Coffing, deceased, upon a claim presented against his estate; brought to the Superior Court in Litchfield county. The claim was founded upon the following contract:—

"This agreement made and entered into this 12th day of May, 1869, by and between Samuel S. Robbins, of Salisbury, Conn., of the first part, and George Coffing, of said Salisbury, and George Church, of Great Barrington, Mass., parties of the second part, witnesseth that the said Robbins, in consideration of the agreements and stipulations hereinafter contained to be done and performed by the parties of the second part, hereby agrees to sell, convey, transfer, assign and make over to said Coffing and Church, seven hundred and fifty shares of the capital stock of the Lime Rock Iron Company, a body politic and corporate, located and doing business in said Salisbury; also two hundred and forty shares of the capital stock of the Hunts Lyman Iron Company, a body politic and corporate, located and doing business in the town of Canaan, Conn., upon demand and a convenient time thereafter. Now in consideration of the foregoing, the said Coffing and Church hereby agree to pay the sum of one hundred thousand dollars for said capital stock within three years from the date of the transfer of said shares of said stocks. [Signed] SAM'L S. ROBBINS,

GEO. COFFING,

GEO. CHURCH."

No notice is taken of the first count of the complaint, which was upon another claim, and to which no defense was made. To the claim now in question, which was contained in the second count, the defendants set up the following defenses:—1st. That the claim was paid by the intestate in his life-time. 2d. That the administrators notified the plaintiff, about the first day of April, 1875, that the claim was disallowed and would not be paid, and that eight years had elapsed from that time before the present suit was brought. 3d. That the right of action did not accrue within six years before the commencement of the action. 4th. That the plaintiff did not bring his action within six

years after February 24th, 1874, when the administrators presented an administration account to the court of probate, in which they credited themselves with the payment of this claim.

The issues upon the first and second defenses were tried to the jury and a verdict rendered for the plaintiff. To the third and fourth defenses the plaintiff demurred, and the court (*Andrews, J.,*) held them sufficient.

The following facts appeared by the averments of the complaint and the admissions of the pleadings.

The stocks described in the contract of May 12th, 1869, were transferred on the 14th of June, 1869, so that the right of action accrued on the 14th of June, 1872; George Church, a co-contractor with George Coffing, had, upon the payment of $50,000 within the period provided by the contract, been discharged from all further obligation under it by the plaintiff; George Coffing died on the 21st of November, 1872, having previously paid $10,000 under the contract; on the 2d of January, 1873, the defendants, with one John H. Coffing, since deceased, were appointed administrators on his estate; six months from that time was limited by the court of probate for the presentation of claims against the estate; within that period the plaintiff presented the present claim; on the 31st of January, 1874, the administrators made report to the court of probate that the claim of the plaintiff had been exhibited and allowed; on the 24th of February, 1874, the administrators presented an administration account in which they credited themselves with claims proved and allowed, paid and to be paid, amounting to the sum of $196,996.07, and among them the present claim of the plaintiff; the estate was represented solvent, and was so in fact, the personal property amounting to $409,465, and real estate to $18,532; the time for closing the settlement of the estate was from time to time extended by the court of probate, and the estate was thus kept open until after the 17th of March, 1883; on that day the administrators gave written notice to the plaintiff that they refused to pay his claim for the reason that it was

barred by the statute of limitations; the present suit was brought May 3d, 1883.

The court having held the third and fourth defenses to the second count sufficient, rendered judgment on that count for the defendants. The plaintiff appealed.

*J. S. Beach* and *A. P. Hyde,* with whom was *A. T. Roraback,* for the plaintiff.

Can the Connecticut administrator of a solvent estate, the final settlement of which he has caused to be delayed more than six years, and while the estate is in due course of settlement under the orders and direction of the court of probate, evade the payment of an allowed and unpaid debt of the estate, under the sole defense that this delay, so caused, has been of such duration as to bar the debt under the general statute of limitations?

Counsel upon either side fail to find any express decision upon the precise point, but not because this is the first time it has happened that the settlement of a solvent intestate estate, against which debts have been presented and allowed, has been delayed long enough to raise such an issue. It is of the common experience of every probate court. The novelty of the issue is due to the fact that it has always been accepted law, doubted by no one, that if a debt was duly presented and put in the list of allowed claims, such debt was, during the settlement of the estate, and while it remained in that list, to be regarded by the court, the administrator, and the creditor, as a continuing debt to be paid out of the estate, with no misgivings by either that the delay of settlement was operating to bar the claim.

All statutes of limitation are based upon the general theory that an adverse claim may by lapse of time ripen into a perfected right or title. But the claim, to ripen into a right, must be adverse either in fact or by legal inference. As between living parties, and as a rule of general application to ordinary business transactions, in the absence of anything rebutting such inference, the law infers from the omission of the claimed debtor to pay, and of the supposed

creditor to sue, for a period of six years, that the attitude of the assumed debtor has been adverse and antagonistic to the claim which is attempted to be enforced; and it presumes that the defendant has lost the evidence by which he could have justified. his position as an adverse claimant if he had been seasonably called on for payment. The law therefore refuses its aid to a creditor whose laches may have deprived his assumed debtor of a defense he otherwise could command. But the reason of the rule vanishes as to one who holds the legal title to property as its lawfully appointed custodian, for the use and in behalf of third parties, who own the beneficial interest therein. Such custodians, whether they be guardians, conservators, executors, administrators, or any other agent whom the law has elected to charge with the duties incident to their respective trusts, do not hold their legal title in presumed hostility to, but in allied amity with, those having the beneficial interest, so that as to all valid and undisputed claims duly presented to the administrator and allowed by him, he is between the time of presentment and allowance and the time of payment or of disallowance, as the case may be, a trustee charged with the express trust of so managing the funds in his hands as will best enable him to discharge the duty of payment. During the period he holds the funds of the estate under such trust the general statute does not run against any allowed debt.

It is important to note—1st. That the administrator holds the funds of the decedent for the use and benefit of those creditors only who have legally come within the circle of his *cestuis que trust.* From that circle, any claimant who has not sought and obtained access to it within the prescribed time and by the prescribed path, is excluded. The administrator therefore is a trustee as to those creditors only whose debts have been duly presented and lawfully allowed. *Reynolds* v. *Collins*, 3 Hill, 36 ; *Briggs* v. *Estate of Thomas*, 32 Verm., 176. 2d. The administrator is a continuing trustee for those creditors whose debts have been duly presented and lawfully allowed, so long only as he consents to remain

in that relation. He is not bound by his allowance. He may at any time under the statute terminate the trust by a notice to the creditor of the disallowance of his claim. *Husted* v. *Hoyt*, 12 Conn., 160 ; *Isaacs* v. *Stevens*, 13 id., 499 ; Revised Statutes, p. 388, sec. 6. 3d. As to all debts duly presented and lawfully allowed, the trust of the administrator does not survive the final settlement of the estate. As to all such debts which his final account shows have been paid, the trust has ended by its performance ; as to any such debt which his final account ignores, he thereby renounces his trust.

When notice is given of disallowance by an administrator to the creditor, it is a repudiation by the administrator of the trusteeship he accepted when the claim was by him allowed, and as to this new relation which he now assumes toward the refused creditor, a new statute of limitations starts into life, which bars the right of the refused creditor to a recovery, unless he brings a suit against the repudiating administrator within four months after such notice. But may not the other creditors of the estate whose claims have been duly presented to and allowed by the same administrator, await the result of that litigation without danger of their debts being barred by the general statute, even though that litigation should be protracted beyond the limit of six years from the time when their respective claims were presented and allowed? Suppose the administrator, from stage to stage of the progress of the litigation with the rejected creditor, procures in his official capacity from the court of probate, decrees of extension of the times limited for final settlement, upon the express ground that the litigated claim is of such magnitude that if it should finally be allowed by the courts the estate might not be solvent, and that the administrator for that reason cannot safely pay any claim until the litigation has ended. Could the administrator— being himself perhaps the only heir at law—when after the lapse of six years the litigation terminates in his favor, set up as against all the other creditors whose allowed and admitted claims have been so kept in abeyance, the defense

which these administrators now set up against the debt of this plaintiff? Why not? There is no argument, claim or suggestion upon the defendants' brief which does not quite as well apply to that case as to this. Or if the litigation should turn out in favor of the rejected creditor, the administrator—heir at law—is still happy, because now, on the defendants' theory, the rejected claimant is the sole creditor to be paid, for he is the only one who has brought his suit within the period limited by the general statute; the debts of the admitted creditors are barred, because they brought no suits within that period, and so it results that the disputed debt is the only one to be paid, and the aggregate of the undisputed and allowed debts goes to the heir-at-law. Respect for the law forbids such a conclusion.

But there is another conclusive argument in favor of the demurrer. It is one which overrides all questions of the suspension of the general statute of limitations and of the duration of such suspension. It is tersely stated by the Supreme Court in *Bradley* v. *Vail*, 48 Conn., 384. "Upon the appointment of the administrator of the estate of the deceased and his becoming qualified to act, that statute was superseded by the statutes relating to the settlement of estates." A new and special system of limitation took the place of the general statute. The new system contemplates and covers two periods; one, the time allowed the creditors to present their claims to the administrator, and the other, the time allotted to the creditor for suit, after the disallowance of his claim by the administrator. For the possible period which may, or may not, intervene between these two periods, the new system makes no provision. None is needed, because its duration, if it occurs, is at the option of the administrator. The new system puts all the creditors upon the same plane. The creditor whose debt matured on the day before the death of his debtor, must be as vigilant and alert as the creditor whose debt would have outlawed if the debtor had lived another day. As against each, the new statute limiting the period for the presentation of claims starts to run from the same goal and towards the

same limit. When that limit is reached the statute halts and comes to a standstill. Time is called. Those creditors who have not presented their claims are " forever barred." Those who have duly presented their claims wait the possibility of a new statute to start to run against their claims. They may wait safely, for this new statute is of another color from the general statute. It does not profess to run against all creditors. It singles out some individual claimant, and as to him, upon fair notice, starts to run from a new and different goal, and towards a new and different limit, and unless the claimant stops this running, by a suit before that limit is reached, he too is "forever barred." But the general statute cannot 'and does not enter for either of these runnings. While the statute limiting the period for the presentation of claims is running, confessedly the general statute is excluded at every point of the course. The general statute would be a useless competitor for the second running, because the law has provided the administrator with a faster statute which he can at any time start to run and distance the general statute. And for the same reason no statute of limitations runs during the interval, if there be one, between the two runnings, because whether there be such an interval or not, and if there be one, its duration is within the option of the party in whose favor such statute would run, if it ran at all. *Arnson* v. *Murphy*, 109 U. S. Reps., 238.

The argument by which these administrators seek to evade an allowed, admitted and unpaid debt, by setting up their own neglect of duty as the only bar to its recovery, may extort our admiration for its ingenuity, but its fallacy is demonstrated by its claimed conclusions, which so startle the judicial mind, and shock· alike the lawyer and the layman, as to forbid their acceptance.

*J. Dewey* of Massachusetts and *C. E. Perkins*, with whom was *D. T. Warner*, for the defendants. ·

1. Our statutes provide that "no action of account, book debt, debt on simple contract, or assumpsit founded upon

implied contract, or upon any contract in writing not under seal, * * * shall be brought but within six years next after the right of action shall accrue." This action is founded upon a written contract not under seal, and a right of action thereon accrued to the plaintiff against George Coffing, then in life, June 14th, 1873; as against the executors it accrued, at the latest, February 14th, 1874; and this suit was not brought until nine years after the latter date. By the terms of the statute, therefore, this suit was clearly barred, unless there is something in the case which takes it out of the statute.

2. The plaintiff claims, as we understand it, that the act, providing that where executors or administrators have disallowed a claim duly presented to them, and have given notice thereof to the creditor, he must commence a suit within the time limited by statute, was intended by the legislature as a repeal or modification of the general statutes of limitation, so far as they affected claims against solvent estates; that it provided a separate and distinct limitation for such claims, and the only one that was thereafter to apply to them, and so was an implied repeal of the general statutes so far as they had theretofore applied to such claims. There would be more plausibility in this claim if all the various statutes in relation to the presentation of claims had been passed at one time and as one system, but such is not the case. The statute providing for the presentation of claims to executors within a time to be fixed by the court of probate was passed in 1782, and until 1817 there was no statute of any kind relating to a disallowance and notice, and bringing a suit within a limited time thereafter. The first statute on this subject was passed in 1817 and provided that upon the disallowance of the claim of any creditor, " if such creditor shall not within six months after he shall be notified by such executor or administrator that his claim is disallowed, commence a suit before a court competent to try the same, * * * such claim shall forever thereafter be barred; and no suit shall be sustained for recovery thereof." At this time the existing statutes of

Robbins *v.* Coffing.

limitation were in substance as follows :—The limitation on bonds, bills, and notes for the payment of money only, passed in 1734, was seventeen years; on parol contracts, passed in 1771, three years; on book debt, passed in 1785, six years; and by an act passed in 1812, on notes over thirty-five dollars, six years. These acts were general, and made no exception of claims against executors or administrators, and we assume applied to them, as will here-after appear was the general rule. Now what reason is there for saying that this statute of 1817 was intended to repeal these general statutes so far as they applied to suits against executors and administrators ? We say that it was not so intended. 1st. This statute was not a statute of limitation, but a positive bar to suits, or a statutory dis-charge of the claim. It says in terms "such claim shall forever thereafter be barred;" and in *Spalding* v. *Butts,* 6 Conn., 30, the court says :—"The statute in question is a positive bar, not removable like other statutes of limitation by a new promise or a recognition of an existing debt, because it is not bottomed on a presumption that the debt is paid." So in *Briggs* v. *Thomas,* 32 Verm., 176, the court says that a similar statute is not a statute of limitation but a "statute discharge." 2d. The object of the legislature in passing this act was to hasten the settlement of estates. In *Spalding* v. *Butts,* supra, the court says in relation to the passage of this act, that "the sole object of the legislature was to compel an early settlement of estates." By the law as it stood in 1817, actions against executors on parol con-tracts had to be brought within three years from the time the cause of action originally accrued, and it is impossible to suppose that the legislature, by saying that on such claims if there was a disallowance and notice suit must be brought within six months, intended to say that, if dis-allowed and no notice was given, the claim should be valid for ever, and to remove all limitations to suits. In many cases such a construction would very seriously affect the settlement of estates. Again, it is well settled that, as to creditors residing out of the state, the statutes relating to

the presentation of claims, and the time for suits to be
brought thereon, do not apply if they sue in the federal
courts. *Hartman* v. *Fishbeck*, 18 Federal Reporter, 291;
*Suydam* v. *Broadnax*, 14 Peters, 67; *Union Bank* v. *Jolly's
Admrs.*, 18 How., 503; *Railway Co.* v. *Whitton*, 13 Wall.,
285. In such cases, therefore, if the claim of the plaintiff
be correct, there would be no limitation at all to suits in
the United States courts; or else the court would have to
hold that the general statute applied in the United States
courts and did not in the state courts. In cases also where
claims due to a person residing out of the state did not
accrue until after the death of the deceased and the expira-
tion of the time fixed for the presentation of claims, accord-
ing to the claim of the plaintiff there would be no statute
of limitations whatever, as the twelve months' statute can-
not apply in the United States courts, or else the court
would have to make still another exception and say that
the statute did not apply except as to claims accruing after
death. All this would clearly be legislative action, not
judicial. So in cases where the estate has been settled and
divided up among the heirs, and suits are brought against
them to collect claims accruing after the death of the
debtor, according to this claim the general statute of limita-
tion would not apply; but the contrary has always been
held. *Sharpe* v. *Freeman*, 45 N. York, 802; *Mead* v.
*Jenkins*, 27 Hun, 570. So it is held that these special
statutes as to presentation of claims do not affect cases of
set-off. If an administrator brings suit against a debtor
who has a claim against the estate, he can set it off, although
he has not presented it within the time limited by law.
Wood on Limitations, 391. It is also held that in general
claims barred by the statute cannot be set off. Id., 601.
If, however, the general statute is repealed as to claims
against solvent estates, there would be no statute of limita-
tions whatever in such cases, unless the court should make
still another exception, and say that the statute should
apply in cases of set-off. 3d. This court is asked to hold
that merely by the passage of this act in 1817, so much of

the general statute as applies to suits against executors and administrators of solvent estates was repealed by implication. The rule is well settled that statutes, especially beneficial ones, will not be held to be repealed or changed by an implication arising from the passage of another statute, unless they be so clearly repugnant as to render it impossible for them to stand together. In *Goodman* v. *Jewett*, 24 Conn., 588, STORRS, J., speaking of the maxim that later statutes impliedly repeal former acts, says: "That maxim applies only when the later statute is couched in negative terms, or where its provisions are so clearly repugnant to the former act that it necessarily implies a negative. If both statutes can be reconciled they must stand and have a concurrent operation." See also *Kallahan* v. *Osborne*, 37 Conn., 490; Sedgwick on Stat. Law, 97. Now there is certainly nothing inconsistent in these two acts; both statutes stand well together. The effect is that if a claim is disallowed, and notice given, suit must be brought within six months; but if there is no disallowance, or no notice, then the general statute shall apply. It is much more reasonable to suppose that the legislature meant this, than that they meant to fix a very short time in cases of disallowance and notice, and no limitation at all in all other cases. There are no negative words here, nor are the terms of this statute so "clearly repugnant" to the terms of the general statute as to show an intent to repeal.

3. But it may be claimed that even if the act of 1817 did not repeal the general statute of limitations as to its application to claims against solvent estates, yet it will be construed by this court as creating an exception to that statute by which such cases are removed from its application; that the death of the deceased suspends the operation of the statute, and that there is no provision anywhere by which it ever begins to run again. There is no doubt but that courts have established some exceptions to the operation of the general statutes, when no express exceptions were made by the statute itself, and that one of these relates to the effect of the death of a debtor upon the removing of the

statute against the creditor. 1st. The general rule is well settled that, at common law, when the statute has begun to run in the life of a debtor, it continues to run after his death, even although no administrator is appointed. Wood on Limitations, 8, says: " One of the most important and universal rules (which is not however without exceptions) is, that time when it has once commenced to run in any case will not cease to do so by reason of any subsequent event which is not within the saving of the statute. Thus it has been held that it is no answer to a plea of the statute, unless otherwise provided therein, that after the cause of action accrued, and after the statute had commenced to run, the debtor within six years died, and that, by reason of litigation as to the right of probate, an executor of his will was not appointed till after the expiration of six years, and that the action was brought within a reasonable time after probate was granted. 3 Redfield on Wills, p. 293, § 46, says: "But, as we have before intimated, it is no excuse that the debtor died before the statute bar became effectual, and that no personal representative had been appointed until just before the suit brought; for if the statute once begins to run it will continue to run until the bar is complete, unless there is some exception in the statute which arrests its operation." See also Angell on Limitations, § 56; 2 Wms. Exrs., 1663; *Rhodes* v. *Smethurst,* 4 Mees. & Wels., 42; *Freake* v. *Cranefeldt,* 3 Mylne & Cr., 499; *Sanford* v. *Sanford,* 62 N. York, 555; *Campbell* v. *Fleming,* 63 Penn. St., 242. Any number of authorities might be quoted to sustain this general principle. It has been held however in this state and elsewhere, that upon the death of a debtor the statute is suspended until the appointment of an administrator or probate of a will, on the principle that it is unreasonable to have the statute running while there is no one who can be sued; and it has also been held that where a statute has been passed fixing a certain time during all of which claims may be presented, that time also should be deducted from the running of the statute, upon the ground that if it should continue to run the creditor could not have

all of the time fixed in which to present his claim, as it might be barred before the expiration of that time. 1 Swift Dig., 307; *Bradley* v. *Vail*, 48 Conn., 375; *Continental Life Ins. Company* v. *Barber*, 50 id., 567. It has never been suggested, however, that in either of these cases the statute, though suspended, has been destroyed; but it has always been held that as soon as an administrator has been appointed, or the time has expired for the presentation of claims, the statute again began to run. *Jordan* v. *Jordan*, Dudley, 182; *Hutchinson* v. *Tolls*, 2 Porter, 44; *Hanson* v. *Towle*, 19 Kansas, 273. In all cases where the courts have made these exceptions, they have held that the statute is suspended only, but that it begins to run again as soon as the cause which required such suspension is removed. *Hanger* v. *Abbot*, 6 Wall, 532; *Trecothick* v. *Austin*, 4 Mason, 16. Both from analogy with decided cases, and also upon principle, we think there can be no doubt that the provision for the presentation of claims within a definite time does not destroy the general statute of limitations, but only suspends it during that time, and then it begins again to run. The plaintiff therefore is brought to the claim that the court should now make a new and additional exception to the general statute never before made by any court, and say what the legislature has never said, that the statute of 1817, requiring a suit to be brought within six months after notice of disallowance, should repeal and destroy the application of the general statute entirely and forever, so far as creditors of solvent estates were concerned. We say that this court will not so hold, for many reasons. (*a.*) This would not be judicial action, but legislative. If such a change is to be made because there is a public necessity for it, it is for the legislature to provide for it and not the courts. They have gone far enough in the exceptions they have already made. *Peck* v. *Botsford*, 7 Conn., 172, 181; *Goodman* v. *Russ*, 14 id., 210; *Hatch* v. *Spofford*, 24 id., 432, 438; Wood on Limitations, 9. (*b.*) There is no reason or necessity for establishing such an exception. It is not within the spirit of the general statute, but is opposed not

only to the general object and intention of such statutes, but also to the whole spirit of our acts relating to the settlement of estates.   Here is a debt which accrued in 1872, and no suit brought on it until 1883, more than ten years since it accrued, and during all that time, except the two months between November, 1872, and January, 1873, a suit might have been commenced at any time.   Now, every one has died who had any knowledge on the subject of the validity of the claim, and the very state of things has arisen to prevent which the general statute of limitations was enacted. In *Hart's Appeal from Probate*, 32 Conn., 539; the court says: "Our courts have called it a beneficial statute, and have looked upon the lapse of time prescribed as a bar to a bringing of an action as furnishing a presumption of payment rather than as an arbitrary statutory bar to a valid claim.   Judge HOSMER quotes with approbation the language of Chief Justice PARSONS, in which he lays down the principle that the presumption from the lapse of time is that the defendant has lost the evidence which would have availed him in his defense if seasonably called on for payment." If there was ever a case to which this principle should apply it is the one at bar.   Not only the original debtor, but his brother and administrator, who was the only other person having any means of knowledge on the subject, are dead, and the heirs now have no means of defense.   If the statute would have run in favor of George Coffing, if he were now alive, there is much more reason why his administrators should have the benefit of it.   See also remarks of STORRS, J., in *Sage* v. *Hawley*, 16 Conn., 106.   In every case that can be found where courts have established exceptions to the statute, it has been on the ground either that no suit could be brought during the time excepted, or else that there was no one who could sue or be sued, or else that a statute has given a certain definite time within any part of which any claim existing at the death might be presented, and a creditor could not be said to have had all of this time to present his claim if the statute of limitations was running during that time.   Neither of these principles applies in a

case like this. At any time after the appointment of the administrator this plaintiff could have brought his suit, there was always some one to sue and some one who could be sued, and we do not claim that the time fixed for presenting claims should be estimated. The six years, and much more, have expired since the end of that time. It is unnecessary to cite authorities to show that the whole spirit of our laws relating to the settlement of estates is in favor of the prompt closing them up and determination of all claims against them. If the doctrine claimed should be established, what is to prevent suits being brought on every claim that has been disallowed, where the administrator who gave notice has died, no matter how old? (*c.*) So far as there have been any decisions bearing upon this claim of the plaintiff they are all adverse to it. *Reynolds* v. *Collins*, 3 Hill, 36; *Bucklin* v. *Chapin*, 1 Lansing, 443; *Fisher* v. *Metcalf*, 7 Allen, 209; *Corliss Steam Engine Co.* v. *Shumacher*, 109 Mass., 416. So far as we can find there are no cases anywhere that hold the contrary. There are no decisions in this state that in cases of solvent estates the death of the debtor entirely prevents all operation thereafter of the general statute of limitations. On the contrary, in *Bacon* v. *Thorp*, 27 Conn., 259, the court says: "General statutes of limitation apply in behalf of executors and administrators as fully as if death had not intervened. By these Mrs. Thorp can avail herself of what Mr. Thorp could have done had he remained in life, but to no greater extent. These general statutes go to the merits of the claim and not to the time and place of presentment. They are founded in part upon a supposed loss of evidence by lapse of time, and in part on the policy of discountenancing stale and antiquated claims." The expressions here used by the court seem to cover the whole ground of this case, especially spoken as they were in relation to the difference between the effect of the general statute and the short one provided for cases where the claim has been disallowed, and they intimate what is apparent, that the reasons which require such a statute between living persons are as applicable to

claims against the estates of deceased ones. All we ask here is that the administrators shall be allowed to avail themselves of what the deceased " could have done had he remained in life." (d.) All the suggestions made under the first point, against assuming that the legislature intended to repeal the general statute, apply as well under this head. As the court say in *Sage* v. *Hawley*, 16 Conn., 106, " the great object of the statute of limitations, enacted on motives of public policy, as well as to protect private rights, was to silence stale claims, or prevent the enforcement of those where the failure of the memory of witnesses, or their death, or the loss of other evidence, might defeat justice, or, at least, render its administration uncertain and hazardous, by requiring claimants to lay the foundation, by a suit, for bringing their demands to a legal adjudication within such a reasonable time that these consequences would not probably ensue." If such a statute is so important in controversies between living men, how much more so is it between a living man on the one side and the estate of a deceased person on the other; where not only the evidence of the debtor himself is necessarily lost, but also the administrator himself, and all witnesses needed by him for the protection of the estate, may have died or forgotten? It may be said that an administrator always has it in his power to give notice of the disallowance of a claim, and can do so even when a claim has once been allowed; but the very question may be whether such a notice has been given, and by waiting, as in this case, until the first administrator has died, the new administrators cannot prove such disallowance or notice, and they would be obliged to give a new notice and try the merits of the claim after the lapse of so many years that the administration of justice would become very " uncertain and hazardous." They would then have to try the case on its merits, perhaps long after every one was dead who had any knowledge or means of knowledge. Certainly, no court ought, without legislative action, to establish a rule which would bring about such a result as this. But the court is asked not only to establish a rule for this specific

case, but to say that in all cases where a claim has been presented and allowed, or if disallowed a legal and sufficient notice of it cannot be proved, there is no limit to the time within which a suit can be brought, and to establish this as the law of this state until the legislature shall change it; and this contrary to the well settled principles of law requiring a speedy settlement of estates, and contrary to all the decisions upon the subject. (*e.*) There is no necessity for such an exception. The plaintiff has been able to bring a suit on this claim ever since an administrator was appointed, in January, 1873, and certainly ever since the time for presenting claims expired. He ought to be held to some duty in the matter. At least within six years from the limit of time for presenting claims he should have taken some steps to collect his claim; have made demand for payment, and, if not paid, have begun suit. A plaintiff ought to be satisfied with the advantage he derives from the fact of the death of the defendant and his lips being sealed, and not be allowed to wait till after the death of his administrator also, and of every one who knows anything on the subject, and have no limitation whatever to the time for bringing a suit.

4. It has been claimed below by the plaintiff that an executor or administrator is a trustee, and that the statute of limitations does not run against express trusts. 1st. It may be admitted that this is so in cases of insolvent estates. In such cases, under our peculiar laws, if a claim is not barred at the death of a debtor it may be presented at any time within the time limited by law for that purpose, and, if so presented and allowed, the general statute ceases to run against it at the death of the debtor. There are, however, special reasons why this is so which do not exist in the case of solvent estates like the case at bar. Swift says, (1 Dig., 307:) "It has been decided in this state that the exhibition and proof of debts to commissioners on an insol vent estate, and their allowance and report of them to the court of probate, is a process to collect debts in a legal and known manner, and takes them out of the statute; and

that no delay in the settlement of the estate or in the bring-
ing of suits against the executor or administrator will operate
as a bar against the creditors." See also *Aiken* v. *Morse*,
104 Mass., 281. There is much reason in this view, for the
law in such cases prohibits any action being brought against
the administrator of an insolvent estate during its settle-
ment. The litigation as to the merits of the claim is had
wholly before the commissioners, or on appeal before the
Superior Court; the decision of either is the judgment of
a court upon the existence and validity of the claim, and
disposes of the whole matter, and the administrator has
nothing to do but to pay such dividend as the court of pro-
bate orders upon the claims allowed by the commissioners
or the Superior Court. An omission to do so is a breach of
his bond, and any action against him would not be on the
claim itself, but on his bond for not complying with the
order of the probate court. There would be no opportu-
nity for him, under any circumstances, in a suit against
him, to set up either the statute of limitations or any other
defense in the original claim. Moreover, in the case of an
insolvent estate the administrator is an express trustee of
all the property solely for the benefit of the creditors, and
comes under another rule, that the statute does not run
against express trusts, as in the case of assignees in insol-
vency or bankruptcy. 2d. But in the case of a solvent
estate the circumstances are entirely different, and none of
these reasons which prevent the bar of the statute in cases
of insolvent estates apply. The administrator of a solvent
estate represents the deceased, and stands exactly in his
place, so far as persons claiming to be creditors, at least,
are concerned. There is no statute which prevents his
being sued on a claim at any time after his appointment,
whenever a person claiming to be a creditor may desire. It
is not made his duty to pay any claim against the estate,
and there are no commissioners or any other court to decide
what are and are not valid claims against the estate. The
only way a person claiming to be a creditor can establish
his claim is to sue the administrator just as he would have

sued the deceased, obtain a judgment if he can, and if he gets one, take out an execution against the estate itself, *de bonis testatoris.* 1 Swift Dig., 795. The administrator in such cases is not a trustee for the creditors, as in the case of the assignee of an insolvent or bankrupt estate, which is held solely for the benefit of creditors; on the contrary he is adverse to those claiming to be such, and it is his bounden duty to contest their claims in every proper way. He is a trustee for the devisees or next of kin, as is well settled, and he cannot be a trustee both for them and for persons claiming to be creditors, at the same time. It hardly seems to be necessary to cite authorities on this point, for every elementary book and numberless authorities lay down the principle that the statute of limitations at common law does run against executors and administrators in the same manner as against living debtors, and this could not be so if the claim of the plaintiff was correct. But there are many authorities directly in point. Wood on Limitations, 426; Angell on Limitations, § 169; 2 Wms. Exrs., 1740. The only decision we have been able to find that favors any such doctrine as is claimed by the plaintiff, is *McCandless's Estate*, 61 Penn. St., 14, and this case was immediately overruled in *Campbell* v. *Fleming*, 63 Penn. St., 242. See also *Bloodgood* v. *Bruen*, 4 Sandf., 427; *Agnew* v. *Fetterman*, 4 Penn. St., 56.

5. We do not suppose it will be claimed that the action of the deceased administrator, John H. Coffing, in allowing the claim and reporting it to the court of probate, or the action of the court in approving such report, can have any bearing on the case. This very question arose in *Stevens* v. *Isaacs*, 13 Conn., 499, where the court held that a similar allowance by a court of probate had no effect whatever, and that the allowance and report by the executor himself had no greater effect. Nor can it be claimed that the plain-tiff had a right to rely on the allowance of his claim by the administrator, and omit to commence suit within the necessary time. If the general statute does not apply to this case, it is of no importance what the plaintiff did or did

not do ; but if the law is that it does apply, it is equally clear that whether the plaintiff supposed that it was or was not necessary for him to bring a suit after his claim had been allowed, is also of no importance.  He was bound to know of the statute and its application to just such cases as this, and also that no act of the administrator could affect its running or remove its bar.   Nor does the fact that the estate has not.yet been settled, or that the court of probate has extended the time of settlement from time to time, affect the .question of whether there is any applica- tion of the general statute.  If, as in cases of insolvent estates, no suit could be brought while the estate was in settlement, there would be reason for saying that the statute was suspended during that period ; but in solvent estates suits can be brought at any time, and the statutes require that, in event of a disallowance, suits must be brought within four months, whether the estate is settled or not.   We have thus considered what we suppose will be adduced by the plaintiff as the principal reasons for his claim, and we submit that they are entirely insufficient to influence this court to introduce such a rule as is claimed, contrary to all decisions elsewhere and to the spirit of the statute, and to the great injury of many estates long settled, which, under this new rule, if established, may now, years afterwards, be broken up.

CARPENTER, J.  The cause of action alleged in the first count of the complaint was admitted.   To the cause of action in the second count there were several defenses :— First, payment ; second, that the action was not commenced within four months after notice that the claim was disal- lowed ; third and fourth, that the claim was barred by the general statute of limitations.   The facts alleged in the first and second defenses were denied, and those issues were tried by a jury.   The third and fourth defenses were demurred to.   After a verdict for the plaintiff on the issues of fact, the issue of law was heard by the court and found for the defendants.   Thereupon judgment was rendered for

the plaintiff to recover the sum demanded in the first count only. The plaintiff appealed from the adverse judgment on the third and fourth defenses.

The sole question is, whether the plaintiff's claim is barred by the statute of limitations. The claim accrued June 14th, 1872; George Coffing died November 12th, 1872; letters of administration were taken out January 2d, 1873, and the estate is being settled as a solvent estate. The time allowed for the presentation of claims was six months. Within that time this claim was presented and allowed by the administrators. For reasons satisfactory to the court of probate the time for closing the settlement of the estate has been extended, and it is not yet settled. On the 17th of March, 1883, the administrators gave the plaintiff a written notice that his claim would not be paid for the reason that it was barred by the statute of limitations. This suit was brought within four months after such notice.

We propose to consider the question involved in this case from a standpoint somewhat different from that taken by the learned counsel for the defendants. They assume that the general statute of limitations as a rule is applicable to solvent estates of deceased debtors. They concede that it is not applicable to insolvent estates, nor to estates of insolvent or bankrupt debtors; and perhaps they would also concede that it is not applicable to solvent estates that are being settled as insolvent estates; but they insist that it is applicable to estates in settlement as solvent estates. And from that standpoint the argument is that the statute of limitations bars the claim unless it can be shown that the statute is suspended in respect to this claim or that it is within some of the statutory exceptions. We think the case must turn upon the construction and effect of the statute relating to the settlement of estates. That statute (Gen. Statutes, p. 388, sec. 6,) is as follows:—" When the creditor of an estate, not represented insolvent, shall present his claim to the executor or administrator, within the time limited by the court of probate, * * * and he shall disallow and refuse to pay it, if such creditor shall not

Robbins *v.* Coffing.

within four months after he has been notified by him that his claim is disallowed, commence a suit against him for the recovery thereof, he shall be debarred of his claim against such estate; but if such creditor die within the said four months, and before suit brought as aforesaid, a further period of four months shall be allowed in favor of his executor or administrator." Which statute is to govern, this or the statute of limitations? It must be admitted that the one is, or may be, incompatible with the other. Where more than four months remains before the claim is barred by the general statute, it is obvious that the creditor cannot have all that time in which to commence a suit, if effect is given to the four months' limitation. On the other hand, when six years have run, as in this case, and that controls, it is equally obvious that the creditor has no opportunity to bring a suit after his claim is disallowed. The legislature could not have intended that.

It is conceded that the statute of limitations was suspended by the death of the debtor. It is also conceded that it remained suspended during the time limited for the presentation of claims. During that time therefore, confessedly, the only statute running against the claim was the one barring it unless presented within the time limited. But the claim was presented. Thereafter it was impossible that it could be barred by that statute. The question then is narrowed to this—did the statute of limitations commence running again upon the expiration of the time limited for presenting claims? Passing over for the present the time between the allowance of the claim by the administrator and its disallowance, let us consider the case as it stood after such disallowance. The section of the statute we have quoted then took effect. By necessary implication that statute gives the creditor four months in which to commence a suit. If that proposition admits of any doubt, it is effectually removed by the concluding clause of that section. Here it is not left to implication. The provision for the representative of the creditor is express, "a further period of four months shall be allowed," &c. Unless we

are to come to the absurd conclusion that the legislature intended to make a distinction in this respect between a creditor and his representative, we must regard the statute as equivalent to a positive enactment that a creditor may commence a suit within four months after his claim is disallowed. And if he may commence a suit he may have a judgment, if otherwise entitled to it. That statute is unequivocal; it is subject to no proviso, no exception, and no qualification. We might stop here, and inquire what power has the court to interpose the statute of limitations when the legislature has not done so, and thus deprive the creditor of a clear statutory right?

This view of the subject exposes the fallacy of one part of the defendants' argument. It is assumed that the statute we are considering is a part of the general system of limitations, that the two statutes concern the same subject matter, and therefore, it is claimed, they are to be taken and construed together. Herein is the fallacy. These two statutes relate to parties under essentially different circumstances. The one is a statute of repose and operates mainly *inter vivos.* It may and frequently does operate for and against the estates of deceased persons, but we can hardly conceive of a case in which the estate of a deceased debtor, which is in the course of proper and orderly settlement, can insist that it runs during the settlement of the estate. The other is a statute providing for the settlement of estates of deceased persons, and applies only to a limited number of such estates. It can have no possible application elsewhere. It contains a special limitation—not to prevent the litigation of stale claims, but to facilitate the speedy settlement of estates. Each statute has its own sphere of operation and is independent of the other. They are in no proper sense *in pari materia.*

We agree that the statute of limitations may apply and bar claims against the estates of deceased debtors; for the statute is not as to all claims and under all circumstances abrogated or permanently suspended by the death of the debtor. It operates to bar all claims when the full time

has run before the debtor's death. So also if administration is granted and nothing more is done, so that no time is limited for creditors to present their claims; perhaps in such a case the statute would again commence to run. And other cases may possibly arise in which the statute may be pleaded. But we hold that it has no application to a claim presented within the time limited, and afterwards disallowed and suit brought within four months. The statute law governing such a case is the section we have quoted, and not the statute of limitations.

But the defendants contend that the statute again commenced to run against this claim at the expiration of the time limited for presenting claims, and, as more than six years elapsed before the suit was brought, that the claim is barred. They concede that the statute was suspended by the death of the debtor, and that it remained suspended until the time for presenting claims expired. This concession carries with it an admission that the statute may be suspended while the power to commence a suit exists; for it will not be denied by the defendants that a creditor has an abstract right to sue before the limitation expires as well as afterwards; and there would seem to be as much reason for it, unless the claim is disallowed. The statute is suspended before in order to give creditors the full time allowed by the court of probate for presenting claims, and also to prevent the annoyance and expense of unnecessary litigation. It remains suspended afterwards for reasons equally cogent.

First, there is then no occasion for the statute. The estate is then in process of final settlement; the claim has been presented and allowed; it has been adjusted as the statute provides, and there is no dispute as to the amount; nothing remains but payment; and it is the duty of the administrator to pay just as soon as funds can be provided for that purpose. And the almost universal rule is that he pays it without a suit. Indeed, there is no object in bringing a suit. It certainly is not necessary in order to deter-

mine the amount due, for that has been agreed upon, and there can rarely be occasion to sue for the purpose of enforcing payment. In insolvent estates a suit is prohibited. The validity of a claim must be contested before commissioners. A suit cannot be brought either to establish the claim or enforce payment. Of course the statute does not run. But in solvent estates, if the parties do not agree upon the amount due, a suit is brought mainly for the purpose of establishing the claim. It cannot often be necessary for the purpose of enforcing payment. If, then, a suit is unnecessary, not to be expected, and rarely if ever brought, there can be little or no occasion for the statute of limitations to apply. But what is conclusive on this subject is, that the administrator has it in his power at any moment to put in operation another statute which absolutely bars the claim unless a suit is brought within four months.

In the second place, if the creditors whose claims have been allowed are required to bring suits within six years or lose their claims, it will be productive of serious inconvenience and much unnecessary expense. Creditors whose claims accrued four and five years and upwards before the debtor's death, must be vigilant to bring suits; and when the settlement of the estate is necessarily delayed, as it often is, many of the creditors, and perhaps all, may be compelled to bring suits. For it will be remembered that the administrator has no power to waive the statute and save costs by promising to pay the debts. Suits must be brought, not for the purpose of establishing the claims, nor for the purpose of enforcing payment even, but for the sole purpose of preventing the operation of the statute of limitations. The evils resulting from such a principle are too obvious to require further notice.

In the third place, the statute does not run because of the relation of the parties to each other. It is well settled that the statute does not apply to an express trust; and that an executor or administrator is a trustee, and con-

tinues to be such until the final settlement of his adminis-
tration account. *Wilmerding* v. *Russ*, 33 Conn., 67. It is
objected that in solvent estates the administrator is not a
trustee for creditors but for the heirs. There is no reason
for the supposed distinction. To the extent of the debts
he is a trustee for creditors, as well in solvent as in insol-
vent estates; and none the less so that there may be a
balance for distribution among heirs or legatees. This
trust relation arises when the claim is presented and
allowed. It ceases when the administrator refuses to pay
it. Mere non-payment, when the exigencies of the estate
require the settlement of the estate to be delayed, is not
sufficient. When a claim is disallowed the trust is repudi-
ated and a limitation commences to run. A suit must be
commenced within four months. If the claim is not dis-
allowed the trust continues until the final account is settled.
Then, if the debt is not paid, the duty of making imme-
diate payment arises, the trust ceases, and the statute be-
gins to run.

We have not deemed it necessary to notice at length the
cases cited from other states. When examined in con-
nection with the statutes under which they arise, we think
there is nothing in them inconsistent with the views we
have expressed.

The court erred in holding that the plaintiff's claim in
the second count was barred by the statute of limitations.
On the issues joined to the court there must be a new
trial.

In this opinion the other judges concurred.