LELIA MASON, ADMINISTRATRIX, APPEAL FROM DOINGS
OF COMMISSIONERS.

Third Judicial District, Bridgeport, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Ordinarily it is the duty of a creditor to present and enforce his claim
against a decedent's estate within the time allowed by the special
statutes of limitation relating thereto. But if, by reason of the
failure or neglect of the executor or administrator to take any
steps to settle the estate in the usual and orderly manner, these
statutes are not called into operation, then the general statute of
limitations will revive and run against the claim, provided there is
no legal obstacle to its presentation and collection by suit as soon
as the personal representative of the decedent is appointed.

Argued October 31st, 1902—decided January 7th, 1903.

APPEAL from the doings of commissioners in allowing a
claim against the estate of a deceased person, taken to the
Superior Court in New Haven County and tried to the court,
*Case, J.;* facts found and judgment rendered disallowing the
claim, and appeal by the claimant. *No error.*

The case is sufficiently stated in the opinion.

*Charles S. Hamilton,* for the appellant (the claimant).

*James H. Webb* and *Arnon A. Alling,* for the appellee (the
administratrix).

TORRANCE, C. J. The trial court held that a certain claim,
presented by Michael Mason to the commissioners upon his
deceased father's estate, was barred by the general statute
of limitations; and the one important question in the case is
whether the court, upon the facts found, erred in so doing.

The facts are these: In June, 1887, Michael Mason, the
father, died intestate, possessed of real and personal prop-
erty, and leaving a widow and three sons, John, Michael, and
George. In May, 1893, upon the application of the widow

and sons, letters of administration upon the estate of the father were issued to John, and he then duly qualified and entered upon his duties as administrator. He filed no inventory, nor was any time limited for the presentation of claims against the estate, but in July, 1893, he drew from the savings bank all the money there on deposit in his father's name, and distributed it to his mother, his brothers and himself. This distribution was made on the assumption that there were no outstanding debts against the estate, and in it the brother Michael fully acquiesced. No arrangement or agreement of any kind was then or afterwards made as to the real, or remaining personal, property. It did not appear from the records of the Court of Probate that John ever ceased to be such administrator, but he testified that shortly after distributing the money aforesaid "he notified the judge of probate that his duties were completed."

In August, 1899, the son George died, leaving a widow and four children. The widow was appointed administrator of George's estate, and in November, 1899, at the request of Michael, she applied to the court that had previously appointed John as administrator, for letters of administration upon the father's estate; and that court, "apparently ignoring its first appointment," appointed one Barker as such administrator, who duly qualified and entered upon the discharge of his duties. The court also limited and allowed six months from November 9th, 1899, for the presentation of claims against said estate. On the 8th of May, 1900, Michael presented the claim here in question to such administrator. Thereupon the estate was represented to be insolvent, the court appointed commissioners, and thereafter the claim came regularly before them and was by them allowed; and from that allowance the widow of George brought her appeal to the Superior Court. The foregoing are the controlling facts.

For the purposes of the argument merely, we shall assume, without deciding, that Michael's claim, if presented in time, was a valid claim against his father's estate, and that it accrued at his father's decease; and further, that the appoint-

ment of Barker as administrator in 1899, and the appointment of commissioners, were valid appointments.

Michael's claim against his father's estate was of such a nature that it would be barred by the statute of limitations (General Statutes, Rev. 1902, § 1110) unless suit was brought upon it within six years from the time it accrued, at the death of his father, or unless something prevented the running of the statute against the claim; and undoubtedly the death of the father prevented the running of the statute, until an administrator was appointed and qualified, because until then no suit upon the claim could be brought. *Gay's Appeal*, 61 Conn. 445; *Continental Life Ins. Co. v. Barber*, 50 id. 567; *Bradley v. Vail*, 48 id. 375; *Robbins v. Coffing*, 52 id. 118. But after John was appointed and qualified as administrator, in May, 1893, and proceeded to administer the estate as a solvent estate, Michael could have immediately thereafter presented his claim, and if not paid at once, could have brought suit upon it, had he chosen to do so. *Caulfield v. Green*, 73 Conn. 321. The right to bring suit upon a claim against a solvent estate, before the time limited for presenting claims has expired, was taken away in 1901 (General Statutes, Rev. 1902, § 329); but that fact does not affect the present case. The fact that during the six years next succeeding May, 1893, no time was limited by the Court of Probate for presenting claims against the estate, did not affect Michael's right to sue. This condition of things continued for more than six years after May 8th, 1893, and during all that period Michael presented no claim, and brought no suit, against his father's estate. Why then, under the general statute of limitations hereinbefore referred to, is not his claim barred? Because, he says, the operation of that statute was suspended as to his claim by the death of his father, and was ever thereafter superseded by the statute of limitations specially applicable to claims made against solvent or insolvent estates of deceased persons.

When the estates of deceased persons are in the course of orderly settlement in all respects according to law, it is undoubtedly true, as a general rule, as shown by the cases

Mason's Appeal.

cited, that claims against them are governed, as to time of presentation and bringing suit, by the special, rather than by the general, statutes of limitation; this, however, is not a universal rule, and it has its exceptions. Some exceptions to this general rule were recognized in the case of *Robbins* v. *Coffing*, 52 Conn. 118, 141, in the following language: "We agree that the statute of limitations may apply and bar claims against the estates of deceased debtors; for the statute is not, as to all claims and under all circumstances, abrogated or permanently suspended by the death of the debtor. It operates to bar all claims when the full time has run before the debtor's death. So, also, if administration is granted and nothing more is done, so that no time is limited for creditors to present their claims; perhaps in such a case the statute would again commence to run. And other cases may possibly arise in which the statute may be pleaded." In the case at bar an administrator was appointed and qualified in May, 1893, and practically nothing more was done for more than six years thereafter; and clearly, during all that time, the case comes within one of the classes of cases here mentioned, where the court thinks the general statute of limitations would "perhaps" again begin to run on the appointment and qualification of an administrator. We are of opinion that it does begin to run in such a case on the due qualification of an executor or administrator.

There is no error.

In this opinion the other judges concurred.