ETHEL G. C. BEACH *v.* JOSEPH W. BEACH ET AL., EXECUTORS (ESTATE OF MARY B. BEACH), ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

584

Argued June 9—decided July 23, 1954

*Everett F. Fink,* with whom was *Joseph W. Ress,* for the appellant (defendant Goodwin B. Beach).

*Frederick U. Conard, Jr.,* for the appellants (defendants Joseph W. Beach et al., executors).

*Reinhart L. Gideon,* with whom was *Salvator D'Esopo,* for the appellee (plaintiff).

BALDWIN, J. The plaintiff brought this action to the Superior Court in Hartford County on December 19, 1951, against the defendants Joseph W. Beach and George H. Day, executors under the will of Mary Batterson Beach, and the defendant Goodwin B. Beach. She claimed certain deficiencies in the payments due under a separation agreement between her and the defendant Goodwin B. Beach, the performance of which had been guaranteed by the decedent. The defendants denied that there was any deficiency. They also, in special defenses, alleged that the claim of the plaintiff was barred in part by the Statute of Limitations. The defendant executors further alleged that the plaintiff was estopped from asserting her claim against them because of her failure to give notice of any default to, or make any demand upon, their decedent during her lifetime. The trial court rendered judgment for the plaintiff against all the defendants and they have appealed.

A summary of the finding, with such corrections as are warranted, follows: The defendant Goodwin B. Beach and the plaintiff, husband and wife, resided in Hartford. Mary B. Beach and Dr. Charles C. Beach were the mother and father of Goodwin. On May 14, 1920, and August 29, 1923, Goodwin and his brother, the defendant Joseph W. Beach, at the request of their mother created trusts from which the plaintiff was to receive the net income during her life. On September 15, 1925, the plaintiff and Goodwin entered into a separation agreement. In connection therewith Goodwin set up a third trust, the net income from which was to be paid to the plaintiff during her life. The separation agreement provided:

"The party of the first part [the defendant Goodwin B. Beach] hereby guarantees that the income under the trusts . . . shall for five years after the date of the execution of this agreement net the party of the second part [the plaintiff] not less than Four Thousand Dollars ($4,000) per annum, and for the succeeding seven years not less than Five Thousand Dollars ($5,000) per annum, and thereafter not less than Seventy-five Hundred Dollars ($7,500) per annum for her natural life; and the party of the first part hereby agrees to pay to the party of the second part, at the end of each year, the difference, if any, between the above respective sums and the income from said trusts." The fiscal year of each of the trusts was October 1 to September 30.

The separation agreement contained a provision that "the mother and father of the party of the first part during her or his respective lives will by writing duly executed and acknowledged unconditionally guarantee performance by the party of the first part of his obligations herein created, in consideration of a written general release to be executed and acknowledged by the party of the second part and delivered to the party of the first part for his mother and father, which release the party of the second part agrees hereby to deliver on tender of said guarantee." This guarantee by Mary B. and Charles C. Beach was in the following terms: "In consideration of the execution and delivery to us of a general release by the said Ethel G. C. Beach, the receipt whereof is hereby acknowledged, we do hereby unconditionally guarantee during our natural lives due performance of the obligations herein created by the said Goodwin B. Beach. It is understood, however, that the said guarantee does not bind our estates or either of them after death." The separation agree-

ment appears to have been executed by the plaintiff and the defendant Goodwin in New York on September 15, 1925. The guarantee executed by Mary B. and Charles C. Beach was on a separate sheet of paper and was attached to the separation agreement. It was executed by them in Hartford on September 12, 1925. In 1937 the plaintiff brought an action on the agreement and the guarantee against the defendant Goodwin and his mother and father. *Beach* v. *Beach,* Superior Court, Hartford County, No. 56822. Judgment for the plaintiff was entered on April 11, 1938, and was satisfied on May 2, 1938. On May 12, 1938, the parties modified the separation agreement by a supplemental agreement which reduced the payments called for under the former to $5000 per annum. The separation agreement of September 15, 1925, was executed under seal. The guarantee was not a sealed instrument. The modification of May 12, 1938, was not under seal, but was, by its terms, made a part of the original agreement.

Dr. Charles C. Beach died on February 11, 1948, and his estate has been settled. Mary B. Beach died on May 21, 1951. No written notice of default or demand for any deficiencies under the modified agreement was ever made upon Goodwin by the plaintiff. He was a trustee of the trusts created by him and knew or should have known of any deficiencies. On October 22, 1951, the plaintiff filed with the executors under the will of Mary B. Beach a notice of claim and a demand for $14,707.85, alleged to be due on the guarantee by reason of claimed deficiencies of income which had accrued each year, save one, commencing with 1939. The executors disallowed the claim. It does not appear that any notice of default or demand for payment by reason of Goodwin's default under the separation agreement was made upon

Mary B. Beach in her lifetime, after the action which was disposed of in 1938.

The parties, in an agreed statement of facts, set up a schedule showing the total income from the three trusts, the income taxes paid thereon by the trustee in behalf of the plaintiff, and the trustees' commissions, each year, from October 1, 1939, to October 1, 1951. The trial court reached the following conclusions: (1) The separation agreement was to be construed so as to provide to the plaintiff an income of not less than $5000 each year, free of any income taxes, and Goodwin was not entitled to credit for the payment of such taxes by the trustees out of the income of the trusts. (2) The guarantee was absolute and unambiguous, and no notice to, or demand for payment upon, Mary B. Beach during her lifetime was required of the plaintiff. (3) The Statute of Limitations was no bar to the plaintiff's cause of action because the statute does not run against payments contemplated by a continuing trust or by an unconditional guarantee. Judgment was rendered for the plaintiff to recover from the defendants $13,090.88 with interest and costs.

The defendants claim, first, that the plaintiff, and not Goodwin, must pay the income taxes upon the income payable to her under the trust. The answer to this claim lies in finding the intent of the parties as expressed in their written agreement providing for the support of the plaintiff. Certain long established canons of construction are applicable. The intention of the parties is to be found in the language they used when read in the light of their situation and the circumstances connected with their agreement. *Preston* v. *Verplex Co.,* 135 Conn. 187, 189, 62 A.2d 860; *Colonial Discount Co.* v. *Avon Motors, Inc.,* 137 Conn. 196, 200, 75 A.2d 507. The words they

employed must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 16, 31 A.2d 393; *Perkins* v. *Eagle Lock Co.,* 118 Conn. 658, 663, 174 A. 77.

In the agreement as modified, the pertinent portion of the clause dealing directly with the payments to be made by Goodwin to the plaintiff was that he guaranteed that the income from the trusts "shall . . . *net* [the plaintiff] not less than [$5000] per annum for her natural life" (italics supplied). The word "net" is used as a verb. This use appears to have been deliberate and for a purpose. Under other provisions of the contract the plaintiff agreed to give up all her claims upon Goodwin for future support, for alimony in case of a divorce, and for dower rights, and Goodwin was relieved of all these liabilities. Further, Charles C. and Mary B. Beach were to receive from the plaintiff a general release, presumably of any claim against them whatsoever unless it was based on the agreement with Goodwin and on their guarantee. Henceforth, the plaintiff could look only to the agreement and the guarantee for her support for years to come. The trusts were a secondary consideration, from which income would be available. But the parties definitely contemplated that this income might not always be sufficient to supply the agreed amount, and therefore it was provided that any deficiency would be met by Goodwin personally.

The word "net" as a verb means "[t]o produce or gain as clear profit." Webster's New International Dictionary (2d Ed.). In *Wehrhane* v. *Peyton,* 133 Conn. 478, 486, 52 A.2d 711, we said that the " 'net income' of a trust estate ordinarily means the amount

of income remaining after the payment of the expenses of administration and the making of other expenditures properly chargeable against gross income." The agreement in the case at bar was not, however, only to pay to the plaintiff the net income from the trusts. It went further and provided that the income from the trusts would "net" her not less than the stated amount. If it did not, she was to receive from Goodwin or, in the event of his default, from his father and mother, enough to make up the difference. In short, she was to have $5000 net each year. *Schneidau* v. *Manley,* 131 Conn. 285, 291, 39 A.2d 885.

Support for such an interpretation can be found in *Beach* v. *Beach,* Superior Court, Hartford County, No. 56822, in which the present plaintiff sued Goodwin and his mother and father on the separation agreement and the guarantee. In that case, which is referred to above, in the summary of the finding, judgment was rendered by *Dickenson, J.,* on April 11, 1938. The defendants' counsel have discussed in their brief and oral argument the question whether that judgment makes res adjudicata the interpretation of the contract clauses herein discussed. It is not necessary for us to decide the question. The plaintiff did not press the claim of res adjudicata in her brief or oral argument further than to argue that the decision in the earlier case "has a tremendous bearing" upon the decision of this one. The earlier case was brought upon the identical agreement involved here except that the amounts of the payments guaranteed by Goodwin were stated to be $4000 annually for five years, $5000 for the next seven years, and $7500 thereafter. The plaintiff and Goodwin were involved, as well as Mary B. Beach, whose estate is a party to the present action.

An examination of the file shows that Goodwin claimed credits arising from the payments made by the trustees, from the trusts set up under the agreement, for taxes and commissions chargeable against the income of those trusts. Charles C. and Mary B. Beach, the other two defendants, filed a memorandum of authorities in their own behalf in which they attacked only the plaintiff's claim for damages in the form of traveling expenses and attorneys' fees. In the memorandum of decision the trial court stated: "The expressed income provision is 'net' and the commission and tax charges are not proper credits." None of the defendants appealed and the judgment was satisfied on May 2, 1938. On May 12, 1938, the plaintiff and Goodwin entered into the supplementary agreement, in which they did no more than to modify the amount of the payments due under the contract of September 15, 1925, by reducing it to $5000 a year. Nothing was stated about the allowance of any credit to Goodwin for income or other tax payments made by the trustees out of trust income, thus indicating an acceptance by Goodwin of the interpretation placed by the court upon the meaning of the word "net." The practical construction of a contract indicated by the conduct of the parties to it is strong presumptive evidence of their intention. *Volk* v. *Volk Mfg. Co.*, 101 Conn. 594, 601, 126 A. 847. We conclude that the defendants are not entitled to take credit for the income taxes paid by the trustees upon the income from the trusts.

The defendants' second claim is that the estate of Mary B. Beach is exempt from liability by the terms of the guarantee which she executed. The guarantee was appended to the agreement of September 15, 1925. The terms pertinent to this discussion were

that Charles C. and Mary Beach did "unconditionally guarantee during [their] natural lives due performance of the obligations . . . created by . . . Goodwin B. Beach. It is understood, however, that the said guarantee does not bind [their] estates or either of them after death." The portion of the first sentence quoted, standing alone, presents no ambiguity. The guarantee was, by its own terms, unconditional. Furthermore, it was given in consideration of a general release from the plaintiff, and the release was acknowledged. As long as they lived, Charles C. and Mary B. Beach were obligated to perform Goodwin's promise if he failed to do so. That promise was that the plaintiff would be paid the income of the trusts and that Goodwin would pay as much more as might be needed to make $5000 net to the plaintiff, annually. If Goodwin failed to meet his obligations in any one year, the liability of Mary B. Beach arose at once with respect to the deficiency due for that year. The time of default and the amount due were certain. The guarantee was unconditional and absolute, and no notice of default or demand was necessary. *Wallace Barnes Co.* v. *Zachs,* 117 Conn. 285, 287, 167 A. 726; *Perry* v. *Cohen,* 126 Conn. 457, 459, 11 A.2d 804; 24 Am. Jur. 942 § 105, 946 § 110; 38 C.J.S. 1223.

The second sentence quoted, if taken by itself, is ambiguous. It could be construed as conveying in further and different language the intent expressed in the portion of the first sentence quoted, that is, that so long as Charles C. and Mary B. Beach lived, and not merely so long as Goodwin lived, they unconditionally guaranteed the annual payments accruing during their lifetime. It could also mean that no liability for any default occurring before their respective deaths, could, if unenforced, be collected

from their respective estates. If it means the latter, then it is inconsistent with an earlier clause of the contract which provides only that "the mother and father of [Goodwin] during her or his respective lives will by writing . . . unconditionally guarantee performance [by Goodwin] of his obligations herein created." The context and the form of the contract dated September 15, 1925, show that the guarantee must have been obtained by Goodwin. It was signed only by Charles C. and Mary B. Beach. It is their language and was inserted for their benefit. It must be construed most strongly against them. *New Haven Water Co.* v. *New Haven*, 106 Conn. 562, 579, 139 A. 99; 12 Am. Jur. 795; Restatement, 1 Contracts § 236, comment d. The court did not err in construing this contract in such a manner as to hold the estate of Mary B. Beach liable under it.

The defendants' third major claim is that the plaintiff is barred by the Statute of Limitations from recovering any sums alleged to be due for deficiencies for the fiscal years of the trusts from the fiscal year ending September 30, 1939, through and including the fiscal year ending September 30, 1945. This suit having been instituted on December 19, 1951, any liability for these years, they assert, arose more than six years before the bringing of any action to enforce it. We shall consider this point, first, as it applies to Goodwin's liability. This is an action at law upon a contract. The contract, as executed on September 15, 1925, was an instrument under seal. The subscription recites that the parties have "hereunto set their hands and seals," and the letters "L.S." appear after each signature. General Statutes § 7902. The very nature of the transaction recorded by the contract is such that the parties who executed it can be said to have intended it to be

a sealed instrument. *Caputo* v. *DiLoretto,* 110 Conn. 413, 415, 148 A. 367. By the terms of the agreement, Goodwin was to make up, each year, the difference between the income from the trusts and the amount stated in the agreement. Each year in which there was a deficiency gave rise to a separate claim. The supplemental agreement of May 12, 1938, does not alter the nature of Goodwin's obligation as one under seal. While no formal seal appears to have been affixed to that instrument and the customary "L.S." was not appended, the subscription recites that the parties "have hereunto set their hands and seals." More than that, by the very terms they used, they incorporated the supplemental agreement into the original separation agreement and made it a part thereof. A sealed instrument may be modified by one not under seal. *Blakeslee* v. *Board of Water Commissioners,* 121 Conn. 163, 184, 183 A. 887. It does not follow that the sealed instrument containing the agreement of September 15, 1925, takes on the character of the unsealed instrument modifying one of its terms, when the parties obviously intended that it should not. See *Jacksonville, M., P. Ry. & Nav. Co.* v. *Hooper,* 160 U.S. 514, 519, 16 S. Ct. 379, 40 L. Ed. 515. The seventeen-year limitation upon contracts under seal prescribed by General Statutes, § 8313, applies to Goodwin's liability, and the plaintiff's claim is not barred as to him.

As to the defendant executors, a different situation is presented. The guarantee which the decedent executed did not purport to be, and was not, an instrument under seal. While she did guarantee the performance of Goodwin's obligations under the trusts as well as under the separation agreement, the liability against her in this case arises, not because of Goodwin's failure to perform his duties as

trustee, but because of his failure to make up the deficiencies each year between the income from the trusts and the amount he promised in the separation agreement she would get. The instrument which Mary B. Beach signed was separate and distinct, executed at a different time and place, and given for a different consideration, to wit, a general release from the plaintiff. Being a separate undertaking, it is governed by the Statute of Limitations applicable to a contract not under seal. *Bridgeport* v. *United States Fidelity & Guaranty Co.*, 105 Conn. 11, 31, 134 A. 252; *Carpenter* v. *Thompson*, 66 Conn. 457, 463, 34 A. 105. As to the estate of Mary B. Beach, the limitation of six years prescribed by General Statutes, § 8315, applies, and any claim for a deficiency which arose prior to six years before her death is barred if, as we assume, the Probate Court entered an order limiting the presentation of claims at the time when her executors qualified. See *Bradley* v. *Vail*, 48 Conn. 375, 384; *Mason's Appeal*, 75 Conn. 406, 408, 53 A. 895.

There is error in part; the judgment is affirmed as to the defendant Goodwin Beach but is set aside as to the defendant executors; and a new trial is ordered limited to the question of damages.

In this opinion the other judges concurred.