JOSEPH A. VOLK, JR. *vs.* VOLK MANUFACTURING COMPANY, INC.

Third Judicial District, Bridgeport, October Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

An improvement of a patent is an addition to or change of the thing patented, whereby its value is increased or its utility or excellence enhanced; the improvement itself may or may not be patentable, depending upon whether it embodies a new principle or mode of operation not utilized in previous inventions.

Whether a transfer of a patent and improvements thereof includes nonpatentable improvements is to be determined from the subject-matter and terms of the instrument, which, if ambiguous, will be interpreted in the light of the practical construction which the parties themselves, by their words, acts and conduct, have placed upon it.

The tax or duty paid to the owner of a patent for the privilege of manufacturing or using the patented article is a royalty; but the term is equally appropriate as applied to nonpatentable improvements.

In the present case the defendant was the successor of a corporation to which the plaintiff had assigned his patent rights to a fuse and "any subsequent invention or improvement of said fuse," in consideration of the payment of royalties. For a period of seven months, the defendant continued its predecessor's practice, extending over a period of two years, of paying the plaintiff royalties upon certain nonpatentable improvements, but at the end of that time it refused payment on anything but the patented article itself, and, at the same time, insisted upon complete performance by the plaintiff of his agreement not to engage in the independent manufacture and sale of any style or type of fuse. *Held* that the contract, construed in the light of the practical meaning placed

upon it by the conduct of the parties, including the payment of royalties upon the nonpatentable improvements, did not sustain the defendant's contention—a conclusion reinforced by the probability that the parties could not have intended the inequitable and unreasonable consequences which would result if the defendant's claim were upheld.

Argued October 29th—decided December 12th, 1924.

ACTION for an accounting of royalties alleged to have accrued under a written agreement, and for a recovery of the amount found due thereon, brought to and tried by the Superior Court in Fairfield County, *Wolfe, J.;* facts found and judgment rendered for the plaintiff for $2,465, and appeal by the defendant. *No error.*

Plaintiff and the Volk Manufacturing Company of Connecticut, hereafter called Connecticut Company, on July 9th, 1918, entered into a written contract by which plaintiff agreed that he would sell and transfer by written assignment all his interest in patents No. 924,860 and No. 981,038, and the right and title to the fuse, the subject of these patents, and the sole and exclusive right to manufacture and sell the same; that any subsequent invention or improvement of the fuse should be the sole and exclusive property of Connecticut Company, and that, during the continuance of the contract, plaintiff would not engage in the manufacture and sale of any style or type of fuse except at the request of Connecticut Company, and would give it all information in his possession regarding the fuse. Connecticut Company, in consideration of the agreements of plaintiff, agreed to pay him as a royalty ten per cent of all monthly sales, payable monthly, and that it would employ plaintiff to assist in the manufacture of this fuse and pay him a salary of $50 a week with the option on the part of Connecticut Company at any time to discontinue his employment and engage plaintiff as a salesman at a compensation of ten per

cent of list price of all sales made, the plaintiff to pay his own expenses. The parties further mutually agreed in this agreement that Connecticut Company should have the right at its option to cancel this agreement at any time and, upon this being done, all the patent rights and title to the fuse should be reconveyed and assigned to plaintiff, and all rights of either party under this agreement should become void.

Prior to the execution of this agreement the plaintiff had made two types of renewable fuses, one known as the "ferrule" fuse and the other as the "knife-blade" fuse, and these were in the hands of Connecticut Company. At the time of the execution of this agreement the plaintiff duly assigned these patents to Connecticut Company. The "ferrule" fuse is covered by letters patent No. 981,038, but the "knife-blade" fuse is not covered by either of these patents, nor are any of its parts so covered, nor are they patentable. Both fuses contain a link, but the link is not covered by these letters patent and is not patentable. Both the knife-blade fuse and the link are the result of plaintiff's suggestions and ideas and are an improvement or change over the ferrule type, which is also the idea of the plaintiff. Both of these types of fuses, with the links, were manufactured by Connecticut Company, and royalties were paid plaintiff from the time of execution of this agreement until the organization of defendant company, and the covering or label on all the fuses contained plaintiff's name and the word "patented," and the name of plaintiff was also stamped on the link.

The defendant, Volk Manufacturing Company, was incorporated in New Jersey, and took over the entire capital stock and assets and liabilites of Connecticut Company and continued the business and manufacture as its predecessor had done, and duly paid to plaintiff,

as its predecessor had done, royalties upon both ferrule and knife-blade types of fuses until about March, 1921. About this time defendant notified plaintiff that it would no longer pay him royalties upon the so-called "link" in both fuses, or the knife-blade fuse, upon the ground that they were not covered by these letters patent, and it therefore ceased to pay royalties to the plaintiff upon such products, and has not since this time paid royalties to plaintiff upon such products, although it has continued and still continues to manufacture and sell both the ferrule and knife-blade types of fuses and links. Defendant has continued to pay the agreed royalties to plaintiff upon its manufacture of the ferrule type of fuse. The word "improvements" on an invention covered by a patent may be an addition thereto which is adapted to increase its value, or it may be a substitute therefor, which is adapted to supplant it entirely by performing its function more efficiently and more inexpensively.

Plaintiff has duly performed his part of this agreement. Neither Connecticut Company nor this defendant at any time exercised its option and right to cancel this agreement, or to reconvey or reassign such patent rights of plaintiff, but has at all times and up to the trial continued to manufacture and sell both types of fuses and the links herein described.

Defendant has sold knife-blade fuses on which it has not paid any royalties, in the sum of $16,473.25, and links in the sum of $8,181.42.

The following conclusions were reached by the trial court: (a) That under the terms of the agreement, Exhibit A, and in view of the foregoing facts, the plaintiff is entitled to receive the agreed royalties on all knife-blade fuses and links sold by defendant, as well as on the ferrule type of fuse. (b) That the words subsequent "invention or improvement" in Article 3

of the agreement, are not to be limited in their interpretation and construction to inventions or improvements that are clearly patentable.  (c) That even if the knife-blade fuse and the links are not clearly patentable, a due consideration of such agreement read in the light of the surrounding circumstances, discloses a valuable consideration moving from the plaintiff to the defendant, entitling the plaintiff to the payment of the royalties in question.  (d) That the defendant having taken full advantage of all of the terms of the contract and having continued to manufacture and sell both the knife-blade fuse and the links, and at no time having offered to exercise its option and right to cancel the agreement and restore the plaintiff to his former rights but having continued to hold the plaintiff to the strict terms of the agreement upon his part to be performed, is now estopped from making the claim that it is not bound to pay royalties on such links and knife-blade fuses.  (e) That plaintiff is entitled to judgment as on file.

*Arthur L. Shipman,* for the appellant (defendant).

*Leo Davis,* with whom was *Minerva M. Davis,* for the appellee (plaintiff).

WHEELER, C. J.  The judgment appealed from is for royalties upon knife-blade fuses and links manufactured and sold by the defendant.  These are non-patentable improvements or changes over the ferrule type of fuse, the right and interest in and to the patent rights for such fuse and the improvements thereto having been granted by patents to plaintiff, and transferred to defendant's predecessor.  The validity of the judgment depends upon whether the contract between the parties transferred only these patent rights and the

improvements thereto, together with the sole and exclusive right to manufacture and sell the same, upon which sales royalties were to be paid, or whether it included the payment of royalties upon the knife-blade fuse and links which were improvements or changes over the patents thus granted but which were not patentable. This will be resolved by determining the meaning of this contract of transfer. An invention is prima facie an improvement, but an improvement is not necessarily an invention. *Schwarzwaelder & Co.* v. *Detroit,* 77 Fed. 886, 891. The addition to, or change of a machine, manufacture or composition, by which its value is increased, or its utility or excellence enhanced, will be an improvement, but whether the improvement is patentable depends upon whether it embodies a new principle or mode of operation not theretofore utilized in another invention. So that the use of the term improvement in connection with a transfer of a right or interest in a patent is not necessarily a patentable improvement, but may be one which is nonpatentable. Its meaning must be found from the subject-matter and context of the contract of transfer construed in the light of the surrounding circumstances. *Wolff Chemical Co.* v. *Philadelphia,* 217 Pa. St. 215, 66 Atl. 344, 347.

The use of the term royalty as applied to a patent is a tax or duty paid to the owner of a patent for the privilege of manufacturing or using the patented article. *Western Union Tel. Co.* v. *American Bell Tel. Co.,* 125 Fed. 342, 348. But this is not its exclusive meaning. It may be appropriately used when applied to rental based on the quantity of coal or other mineral taken from a mine. *Raynolds* v. *Hanna,* 55 Fed. 783, 800; *Kissick* v. *Bolton,* 134 Iowa, 650, 112 N. W. 95, 96; *Burke Hollow Coal Co.* v. *Lawson,* 151 Ky. 305, 151 S. W. 657. Or, when used in a gas lease, as referring to

a share of the product or profit reserved by the owner for permitting another to use the property. *Indiana Natural Gas & Oil Co.* v. *Stewart*, 45 Ind. App. 554, 90 N. E. 386. And it is likewise an appropriate term as applied to improvements which are nonpatentable. In *McGill* v. *Holmes, Booth & Haydens*, 48 N. Y. App. Div. 628, 64 N. Y. Supp. 787, royalties were permitted to be recovered on goods not patented, under an agreement to grant a license to manufacture goods under certain patents and to sell these and other goods. The transfer in the contract before us is of "any subsequent invention or improvement of said fuse." The language does not in and of itself confine the transfer to an improvement of a patent. Defendant's sole claim, that this contract merely transfers a patent monopoly, must be determined by the proper construction of this contract, and this involves a search for the intention of the parties as to the use of the term improvement.

After provision for the assignment of the patent right to the ferrule type of fuse, the contract provides that any subsequent invention or improvement of this fuse by plaintiff shall be the sole and exclusive property of the defendant's predecessor, "and that during the continuance of this contract he [plaintiff] will not engage in the manufacture or sale of any style or type of fuse," and will be paid a royalty of ten per cent of all monthly sales. Appeal to the context of this contract does not make clear and definite its meaning, but leaves it doubtful as to whether its intention was to require defendant's predecessor to pay royalties only for its right to exercise a patent monopoly, as the defendant argues, or includes that, together with all improvements relating to this patent right, whether the same were patentable or not, as the plaintiff argues. Since the meaning is doubtful, the law admits evidence

of the practical construction of this contract by the words, acts and conduct of the parties. Such evidence, in cases of doubtful construction, is strong presumptive evidence of the intention of the parties that the contract should be construed in accordance with their own practical construction. This rule is applied to the construction of contracts, documents, deeds and laws. *French* v. *Pearce*, 8 Conn. 439, 443; *Safford* v. *Morris Metal Products Co.*, 97 Conn. 650, 653, 118 Atl. 37; *Construction Information Co.* v. *Cass*, 74 Conn. 213, 217, 50 Atl. 563.

When applied to the circumstances of this case, the rule settles the question of intention in accordance with the plaintiff's construction. Defendant's predecessor, the Volk Manufacturing Company, from July 9th, 1918, paid plaintiff royalties upon the knife-blade fuses and links, nonpatentable improvements upon the patent right to the ferrule type of fuse transferred by plaintiff to it. No question was ever raised during this period as to the right of the plaintiff to royalties under this contract upon the sales of the articles containing these improvements. The defendant, Volk Manufacturing Company, took over the business of the Volk Manufacturing Company about August, 1920, and continued to manufacture and sell both the ferrule and knife-blade fuses and links as its predecessor had done, and to pay plaintiff royalties upon these until about March, 1921. It is a reasonable inference that at the time defendant took over this business, it must have become acquainted with the terms of this contract, since it appears to have been the basis of the business taken over. Further, the defendant continued to label the knife-blade fuses "patented." The knife-blade fuses and links are improvements made by the plaintiff. Defendant claims that because they are not patentable they could be manufactured and

sold by anyone. The contract gave defendant the right to cancel this agreement at any time. It did not exercise this right, but continued to use these improvements in its manufacture and effected sales of over $24,600, and purposes appropriating the profit thereon without paying the plaintiff the ten per cent royalties due under this contract upon the sales of subsequent improvements of the ferrule type of fuse. The practical construction placed upon the contract by the parties and the situation surrounding the carrying out of the contract, make it certain that the parties intended that royalties should be paid upon the sale of these improvements. To permit the defendant to refuse to reconvey these improvements and to continue their manufacture and enrich itself in large measure through the product of plaintiff's brain, would be inequitable, a circumstance indicating the improbability of plaintiff's having intended to make such an unfair and inequitable contract for himself. Defendant relies upon *Strong* v. *Carver Cotton Gin Co.,* 197 Mass. 53, 59, 83 N. E. 328. The case supports the rule of the practical construction of a doubtful contract, to which we have referred, and holds that the contract before it was not within this rule, since the contract was in the particular case under inquiry free from ambiguity.

There is no error.

In this opinion the other judges concurred.