NATIONAL IRON WORKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36909.   Promulgated February 26, 1931.

*James G. Pfanstiel, Esq.*, for the petitioner.
*Mason B. Leming, Esq.*, for the respondent.

384

OPINION.

PHILLIPS: Respondent has determined that since the Bank filed a separate income tax return for the calendar year 1922, and since a separate income tax return executed in the name of petitioner was filed for the period August 22, 1922, to December 31, 1922, petitioner and the Bank are precluded from filing a consolidated return for 1923; they not having secured his consent. The correctness of this determination depends upon the application to the facts of this proceeding of section 240 of the Revenue Act of 1921, the pertinent parts of which read:

(a) That corporations which are affiliated within the meaning of this section may, for any taxable year beginning on or after January 1, 1922, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

(b) In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. There shall be allowed in computing the income tax only one specific credit computed as provided in subdivision (b) of section 236.

(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls

through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The question presented is not whether petitioner, which upon the filing of its articles with the Secretary of State of California became " a party politic and corporate " (sec. 296 of the Civil Code of California), should have filed an income tax return for 1922 (sec. 239 of the Revenue Act of 1921 and article 621 of Regulations 62), but whether it and the Bank were affiliated during any part of that year. Until they were affiliated within the meaning of section 240(c) they could not have filed consolidated returns and until they were so affiliated there was no occasion for the exercise of their right of election. Under the facts of this proceeding there was no such affiliation until the Bank owned or controlled substantially all of petitioner's stock. It is obvious that if during the period involved petitioner had no stock, outstanding or otherwise, if by law it was prohibited from issuing any stock, the Bank could not own or control that which had no existence either in fact or in law, with the result that there could be no affiliation as required by the section.

It is true that one may be a stockholder even though no certificate has been issued to him (*Minal E. Young, Executor, et al.*, 6 B. T. A. 472), but in such a case the person must be entitled to a certificate. In the instant case no stock was issued by petitioner in 1922 and under the laws of California none of the subscribers could have demanded nor could petitioner have issued to them certificates. Such are the provisions of the California Corporate Securities Act of 1917, the material parts of which are:

SEC. 2. The word " security " includes:

All shares or other interests or rights into which the capital, capital stock, or property of companies or rights of stockholders or members thereof are divided, including all treasury shares and shares of their own capital stock purchased or otherwise acquired by companies upon delinquent assessment sales or in any other lawful manner, and all certificates and other instruments issued by them or their authority, evidencing or representing such shares, interests, or rights:

SEC. 3. No company shall sell, except upon a sale for a delinquent assessment made in accordance with the provisions of Article II of Chapter II of Title I of Part IV of Division First of the Civil Code; or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the Commissioner a permit authorizing it so to do.

SEC. 12. Every security issued by any company, without a permit of the commissioner authorizing the same then in effect, shall be void, and every security issued by any company, with the authorization of the commissioner but not conforming in its provisions to the provisions, if any, which it is required by the permit of the commissioner to contain, shall be void.

Sec. 25. Neither this act nor any provision hereof shall be deemed to prohibit subscriptions for shares of a domestic corporation made prior to the incorporation thereof and set forth in the articles of incorporation; but such subscription shall be deemed to have been made and accepted upon the condition that such corporation shall be incorporated within ninety days thereafter and, when incorporated, shall with reasonable diligence apply for and secure from the commissioner a permit authorizing the issue of the shares so subscribed for, in accordance with such subscriptions. The directors or trustees named in the articles of incorporation may, prior to the issue of any shares, organize by the election of a president, who must be one of their number, a secretary and a treasurer; and such directors, or a majority of them or such president and secretary may, in the name of and in behalf of the corporation, present an application to the commissioner as herein provided.

Sections 13 and 14 of the above act provided penalties of fine or imprisonment or both for the violation of the act, by any company or by any of its officers, agents or employees.

Under the provisions of this act it was held by the California District Court of Appeals in *Reno* v. *American Ice Machine Co.*, 237 Pac. 784, that not only was stock issued without a permit void, but a contract to sell such stock was also void and could not be ratified. In *MacDonald* v. *Reich & Lievre*, 281 Pac. 106, the same court held that where one had purchased stock so issued without a permit from another holder the stock was void, the sale was void, and " in reality the plaintiff and her assignor never became stockholders in the corporation." In each of the above cases hearing was denied by the Supreme Court of California.

Under the above statute and decisions it seems clear that not only did petitioner have no outstanding stock during the period August 22, 1922, to December 31, 1922, but that if it had issued such stock the issue would have been void. Applying the letter of section 240(c), we are compelled to hold that the Bank not only did not own substantially all of petitioner's stock during this period, but that it neither owned, nor controlled any stock of petitioner for the reason that petitioner had no stock which could be owned or controlled.

Applying the spirit of section 240, we arrive at the same conclusion. That section requires a consolidated return of net income and for the year 1921 (not involved here) of invested capital. Here we have a corporation in embryo which had no stock, owned no property, and had no income, gross or otherwise. There was nothing to consolidate. The income returned for 1922 in its name was the income of the Bank derived from the property of the Bank—property which was not acquired by petitioner until January 17, 1923. Here it is pertinent to point out that the Bank reported a loss of over $19,000, and that by reporting net income in the name of petitioner it suffered a detriment. This so-called return made under erroneous advice should be disregarded in so far as this proceeding is concerned.

Under the facts presented it is clear that petitioner and the Bank were not affiliated within the meaning of section 240 during any part of 1922; that during that year they could not have filed a consolidated return, and, further, that since the Bank owned in its own name 797 out of 800 shares of petitioner's stock during 1923, the corporations were, affiliated from January 17, 1923, to the end of that year, and properly filed a consolidated return for that period.

*Decision will be entered under Rule 50.*