A. T. EVANS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

M. RUIZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. E. STEEGE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64397, 67097, 67098. Promulgated May 17, 1934.

*A. W. Helvern, Esq.*, for the petitioners.
*D. P. Kimball, Esq.*, for the respondent.

OPINION.

MARQUETTE: In each petition it is asserted that the respondent erred in not determining that the profits derived from the exchanges of stock of the Miller Co. for cash and stock of the Union Co. were the income of the marital community under the laws of California. No evidence was introduced on this issue, nor was it referred to by counsel on either side. This issue was abandoned.

Petitioners insist that their common stock was sold for cash and their preferred stock was exchanged for cash and stock, thus resulting in separate transactions. They further contend that there was a reorganization within the meaning of section 112 (i) (1) of the Revenue Act of 1928, and also that they had the right to return so much of their gross gain as was recognized under section 112 (c) (1) on the installment basis, as provided in section 44 of the same act. The respondent determined that there had been a reorganization, but computed the gain as on a single transaction. He denied that the petitioners were entitled to the benefits of section 44. At the hearing respondent's counsel stated that the respondent had erred in determining that there had been a reorganization and insisted that there had been a straight-out exchange of stock for stock and cash, all the gain on which was subject to income tax. He claimed a larger deficiency on the ground that the petitioners should be held to have been in receipt in 1928 of all the stock of the Union Co. which that company had agreed to exchange for Miller Co. stock and cash.

We see no merit in the contention that there were two separate transactions. The Union Co. desired to purchase and in fact did acquire all the stock of the Miller Co. The contract further provided that if the contracting stockholders could not acquire all the stock

of the Miller Co. (except perhaps 20 shares of preferred stock), then they agreed to have that company take such action as would result in the transfer of all its assets to the Union Co., for which the latter agreed to pay the same consideration which it had agreed to pay for the stock. It is clear that the contract called for the purchase and exchange of all the stock except perhaps 20 shares, and not for the purchase of the preferred stock separately. Furthermore, the consideration which was at once to be paid in cash was 39 percent " of the total purchase price " and not that percentage of the price to be paid for the preferred stock alone.

Whether the whole gain of the petitioners arising from their transfers of Miller stock for cash and stock of the Union Co. should be recognized for income tax purposes, or should be recognized only to the extent of the cash paid and to be paid, depends on the application of section 112 of the Revenue Act of 1928, the pertinent parts of which read:

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

\* \* \* \* \* \* \*

(b) (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(c) (1) If an exchange would be within the provisions of subsection (b)(1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received within the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

\* \* \* \* \* \* \*

(i) (1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

We find it unnecessary to decide whether a reorganization occurred, when in July 1929 the Union Co. as sole stockholder of the Miller Co. acquired all the assets of the latter, except $500, the Miller Co. still surviving. Conceding, however, that the answer

should be in the affirmative, there still remains the question of whether the petitioners are entitled to participate in the benefits arising from such reorganization. All the petitioners made their returns on the calendar year basis. We have before us only the calendar year 1928. Petitioners' claims must stand or fall by what was done in that year. *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359. All that the record discloses that was done in that year was the execution of the agreement, the transfer by the stockholders of the Miller Co. of all their stock in that company to the Union Co., and the payment by the latter in cash of 39 percent of the contract price. The acquisition by the Union Co. of all the stock of the Miller Co. in exchange for cash and the Union Co. stock, standing alone, did not constitute a reorganization as that term is used in section 112. *John J. Watts*, 28 B.T.A. 1056. Of course, it is not necessary that all the steps essential to a complete reorganization must be taken in the taxable year, but if the words used in section 112 (b) (3) as modified by section 112 (c) (1) mean anything, it is that an exchange made in a taxable year to be effective under section 112 must have been made in pursuance of a plan of reorganization. In the first place, the Miller Co. was not a party to the agreement of December 11, 1928, and no covenants were made in its behalf except that the stockholders who were parties to the agreement agreed that if they could not by January 10, 1929, secure all the stock of the Miller Co. except 20 shares, then they agreed to procure the transfer of all the Miller Co.'s assets to the Union Co. for the same consideration which the latter had agreed to pay for the stock. There is nothing in the agreement which even remotely refers to what was to occur to the Miller Co. after the transfer of the stock. Much less does the agreement contemplate such action as was taken by the directors of that company on July 1, 1929, when all its stock was owned by the Union Co. As we see it, the contract was one of sale and exchange and nothing else. In fact, the words of the contract are: " Second parties agree to sell to first party, and first party agrees to purchase from second parties, all of the shares of stock of Miller Company owned by second parties at a price as follows, to-wit: * * *."

It is true that the resolution of the directors of the Miller Co. of July 1, 1929, states that their action was taken " pursuant to its plan of reorganization." But when that plan was adopted and what its provisions were are not disclosed. It is pertinent to point out that in July 1929 the Union Co. was, and for several months had been, the owner of all of the Miller Co.'s stock. Neither the petitioners nor any of the old stockholders then had any connection whatever with that company. In the absence of any evidence that

a plan of reorganization was adopted in 1928, and at a time when the old stockholders were in control, we are compelled to find that the petitioners should be taxed as on a straight sale and exchange and that they are entitled to the benefits of section 44 of the Revenue Act of 1928.

The claim of the respondent that in 1928 the petitioners were in receipt of all the stock of the Union Co. must be denied. The agreement of the Miller Co. was that its preferred stock should be delivered to the petitioners and the other stockholders of the Miller Co. immediately following the granting of the permit by the Corporation Commissioner of the State of California. That permit was granted January 12, 1929. Under the laws of California there was no stock in existence and none could exist until the permit was granted. *National Iron Works*, 22 B.T.A. 382. In that case, after referring to the fact that one may be a stockholder even though no certificate has been issued to him and after setting forth all the pertinent provisions of the California Securities Act of 1917, the Board said:

Under the provisions of this act it was held by the California District Court of Appeals in *Reno* v. *American Ice Machine Co.*, 237 Pac. 784, that not only was stock issued without a permit void, but a contract to sell such stock was also void and could not be ratified. In *MacDonald* v. *Reich & Lievre*, 281 Pac. 106, the same court held that where one had purchased stock so issued without a permit from another holder the stock was void, the sale was void, and "in reality the plaintiff and her assignor never became stockholders in the corporation." In each of the above cases hearing was denied by the Supreme Court of California.

*Judgment will be entered under Rule 50.*