LANE-WELLS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TECHNICRAFT ENGINEERING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 99829, 99830.   Promulgated January 31, 1941.

464

Raphael Dechter, Esq., for the petitioners.
E. A. Tonjes, Esq., and Alva C. Baird, Esq., for the respondent.

OPINION.

BLACK: *Issues (a) and (b)*.—These two assignments of error raise essentially the same issue, which is that the Commissioner erred in his determination in the notice of deficiency that Technicraft was a "personal holding company" as defined in section 351 (b) (1) of the Revenue Acts of 1934 and 1936, and section 352 (a) of the Revenue Act of 1936 as amended by section 1 of the Revenue Act of 1937,[1] and that it was subject to the surtax imposed by section

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

\* \* \* \* \* \* \*

(b) DEFINITIONS.—As used in this title—

(1) The term "personal holding company" means any corporation \* \* \* if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, \* \* \* and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. \* \* \*

SEC. 352. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this title and of Title I the term "personal holding company" means any corporation if—

(1) GROSS INCOME REQUIREMENT.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 353; \* \* \*

(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

351 (a) of the Revenue Acts of 1934 and 1936 and by section 351 of the Revenue Act of 1936 as amended. Petitioners contend that the amounts of Technicraft's income designated on its income tax returns as "royalties" were in fact compensation for tangible services rendered to affiliated corporations and did not constitute "personal holding company" income.

All of the license agreements in evidence apply the term "royalty" to the amounts paid to Technicraft thereunder, although the terms of the licenses vary as to the exact nature of the consideration for which the payments were made. Technicraft granted to the Lane-Wells Co. of California merely "any and all rights, privileges and remedies" which Technicraft "might or could do, exercise or perform" under the assignment of the exclusive license to use and sell devices, embodying the Mims patent, but it is quite clear from the language of the other two license agreements that the "royalty payments" thereunder were not confined to receipts from the use of the Mims patent alone. Under each of the license agreements with the Lane-Wells Co. of Oklahoma and the Lane-Wells Co. of Texas, Technicraft granted a nonexclusive license "to make or purchase for the Licensee's own use only, and to use but not to sell, rent, or lease to others said PERFORATORS." In those agreements the term "perforators" was broadly defined "to mean not only the patent specifically mentioned hereinbefore, but also any and all inventions, applications, patents and any continuations, divisions, and/or reissues thereof and whether in the nature of apparatus or processes which the licensor now owns or controls or which it may at any time during the life of this agreement own or control and which relate or are accessories to said PERFORATORS." The agreements provided that "The royalty payments on the PATENT RIGHTS herein licensed shall be fifteen percent (15%) of the gross receipts; minimum royalties shall be not less than Seven Hundred and Fifty dollars ($750.00) per month", that "The term 'PATENT RIGHTS' shall be construed to embrace as a group all the patents and applications herein specified or referred to or implied", and that "The term 'gross receipts' shall be construed to mean the total receipts derived in any manner whatsoever from the manufacture and/or use of any and all apparatus or processes covered by said PATENT RIGHTS without deductions of any kind or character."

Under the license agreements with the Lane-Wells Co. of Texas and the Lane-Wells Co. of Oklahoma, Technicraft was the grantor of the patents and applications used by the Lane-Wells companies. The payments received by it were proportionate to the use of the patents and applications, since the payments were 15 percent of the gross receipts from any and all inventions, applications, and patents which related or were accessories to the perforators. The

payments thus fall clearly within the definition of "royalty" given in Black's Law Dictionary, 3d. ed., as "A payment reserved by the grantor of a patent, lease of a mine, or similar right, and payable proportionately to the use made of the right by the grantee." This definition is well supported by authority. *Western Union Telegraph Co.* v. *American Bell Telephone Co.*, 125 Fed. 342; *In re Elsner's Will*, 206 N. Y. S. 765; *Bellport* v. *Harrison*, 123 Kans. 310; 255 Pac. 52; *Volk* v. *Volk Manufacturing Co.*, 101 Conn. 594; 126 Atl. 847; *Kiesau Petroleum Corporation*, 42 B. T. A. 69.

It seems clear that some of the payments made to Technicraft were not covered by express license agreements. For example, Technicraft had no license agreement at all with Lane-Wells International, Inc., although it collected 15 percent of that corporation's gross receipts from gun perforation. In February 1937 Technicraft's agreements with the Lane-Wells Co. of Texas and the Lane-Wells Co. of Oklahoma expired, but those corporations continued to pay to Technicraft 15 percent of their gross receipts from gun perforation. The facts further show that on June 1, 1937, Technicraft was furnishing the Lane-Wells companies with from 85 to 100 patents or patent applications, of which only 7 or 8 related to the basic principle of the Mims patent.

In their argument that the payments in question did not constitute royalties, petitioners rely on *Kiesau Petroleum Corporation, supra*, wherein a certain percentage of the proceeds from the sale of oil received by a taxpayer under contracts with lessees of oil producing land in return for equipment was held not "derived from royalties" within the meaning of section 351(b)(1) of the Revenue Acts of 1934 and 1936 and the taxpayer was held not to be a personal holding company. The Board held that under the contracts the taxpayer "did not reserve an interest in the oil producing properties; it acquired such an interest for the first time." The instant case is clearly distinguishable, since Technicraft had an interest in patents and applications and under the license agreements "reserved" an interest rather than "acquiring" it for the first time, and in those cases where there were no license agreements it seems clear that the nature of the income was the same.

Petitioners also rely upon *Affiliated Enterprises, Inc.*, 42 B. T. A. 390, wherein the taxpayer operated a sales promotion plan, known as "bank night", which was not and could not be patented or copyrighted, except for some instruction sheets which were copyrighted. The taxpayer provided a few simple articles to execute the idea, derived income in the form of a flat sum weekly payment from "license agreements" with theatre operators, and was held not to be a personal holding company, since its income was not derived from royalties. The case is distinguishable in that Technicraft owned patents

and applications, many of which were patentable, and received not a flat-sum, but 15 percent of the gross receipts derived by each Lane-Wells company from the use of such patents and applications in gun perforation. Moreover, it has been held that the term "royalty" may be applied to receipts derived in respect of nonpatentable improvements. *Volk* v. *Volk Manufacturing Co., supra.*

Petitioners have not shown what portion of Technicraft's income, if any, was derived from engineering services or from nonpatentable devices, as distinguished from patents, and they have not shown the amounts derived under the written license agreements, as distinguished from the amounts received from Lane-Wells International, Inc., and from the Lane-Wells Co. of Texas and the Lane-Wells Co. of Oklahoma after the written license agreements had expired in February 1937. Although Technicraft furnished the Lane-Wells companies with from 85 to 100 patents or applications, of which only 7 or 8 related to the basic principle of the Mims patent, petitioners have not shown what portion of the amounts received by Technicraft was consideration for patents related to the basic principle of the Mims patent. The facts show that on its books for all the years involved and on its income tax returns for 1934, 1936, and 1937, Technicraft treated the payments made to it as royalties. We agree, of course, with petitioners that merely calling these receipts "royalties" in the license agreements and on petitioner's books would not make them "royalties" if, in fact, the evidence showed that they were something else. However, for reasons already stated, we think these payments were "royalties" within the meaning of the applicable revenue act.

These amounts did not constitute royalties merely to the extent of an amount equal to the $200 per month paid by Technicraft for the Mims patent, as petitioners suggest, since the payments to Technicraft were not made solely for the use of the Mims patent, which by itself was not very valuable. It was the improvements and developments to the basic Mims patent, conceived and carried out by Technicraft, which made its use of great value. Manifestly the chief business purpose of Technicraft was to improve and develop the Mims patent and other patents and devices used in the oil business by the Lane-Wells companies. For the use of these patents and devices and their improvements, it received 15 percent of the gross receipts of the different Lane-Wells companies which they in turn received from the gun perforating business. These were none the less royalties, we think, even though they were not received in anything like their entirety for the use of the basic Mims patent.

Therefore, the payments received by Technicraft must be held to be "royalties" within section 351 (b) (1) of the Revenue Acts of 1934 and 1936, and, since petitioners do not contest the fact that Techni-

craft otherwise falls within the definition of a "personal holding company" for the taxable years 1934, 1935, and 1936, the respondent's position as to those years is sustained. *Logan Coal & Timber Association*, 42 B. T. A. 529. The payments were also "royalties" within section 353 (a) of the Revenue Act of 1936, as amended by section 1 of the Revenue Act of 1937, but an additional objection is raised by petitioners in respect of taxability for 1937.

*Issues (i) and (j)*.—Petitioners contend that even if Technicraft be considered a personal holding company in the years 1934 through 1936, it could not have been a personal holding company in 1937 "for the reason that during the latter half of 1937, it had neither assets nor income, and 50% or more of its stock was not held by less than five individuals or their families."

Section 352 (a) of the Revenue Act of 1936, as amended by section 1 of the Revenue Act of 1937, includes in the definition of a "personal holding company" any corporation if at least 80 percent of its gross income is personal holding company income and, in addition:

At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

The question in issue hinges upon the meaning of "at any time during the last half of the taxable year." Section 357 of the Revenue Act of 1936, as amended, provides that "The terms used in this title shall have the same meaning as when used in Title I", and section 48 of Title I of the Revenue Act of 1936 provides, in part:

When used in this title—

(a) TAXABLE YEAR.—"Taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. "Taxable year" includes, in the case of a return made for a fractional part of a year under the provisions of this title or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made.

Technicraft's income tax return for 1937 was filed for the period which began January 1, 1937, and ended August 31, 1937. If "the taxable year", for purposes of determining whether Technicraft falls within the definition of a "personal holding company" in section 352 (a) of the Revenue Act of 1936, as amended, is held to be the fractional part of a year from January 1, 1937, to August 31, 1937, for which the income tax return was filed, then Technicraft falls within the statutory definition of a "personal holding company", since at least as late as May 31, 1937, more than 50 percent of Technicraft's outstanding stock was owned directly, or indirectly, by or for not more than five individuals.

But no personal holding company return appears to have been filed by Technicraft and the parties in arguing this point in their briefs

appear to have considered the taxable year in question as the calendar year ended December 31, 1937. The deficiency notice determined personal holding company surtax liability "for the taxable years ended * * * December 31, 1937" and, in the explanation of adjustments to net income, stated:

The return filed for the taxable year purports to account for the taxable income for the period from January 1 to August 31, 1937; after which latter date the business of your corporation was taken over and its activities conducted by Lane-Wells Company, pursuant to an agreement for reorganization entered into on or about June 1, 1937.

The contention made in your protest, that the said return erroneously accounted for income accruing after June 1, 1937 which should have been returned by the successor corporation, is denied for the reason that the transfer of your assets and business was not effected at the time indicated in your protest and the items of income and deduction involved were properly reflected in your books and return.

In Technicraft's petition the taxable year is treated as ending December 31, 1937, and petitioner alleged as a fact that its "last taxable year was the calendar year 1937."

If the entire calendar year 1937 is treated as "the taxable year" in this case, Technicraft meets the requirements for a "personal holding company" as set forth in section 352 (a), as amended, since the facts clearly show that Technicraft continued to exist as a corporation and had stock outstanding in the names of Lane and Wells and their wives up until July 29, 1937. The reorganization agreement whereby the stock of Technicraft and the other corporations owned by Lane and Wells and their wives was to be transferred to the Lane-Wells Co., the Delaware corporation, in return for shares of its stock was signed June 1, 1937. It was not until July 22, 1937, however, that a permit was granted by the State Corporation Department of California authorizing the Delaware corporation to issue its stock. The actual issuance took place a week later, July 29, 1937. At that time Technicraft issued a new certificate of its shares to the Delaware corporation. Not until that date was there a reorganization. *National Iron Works*, 22 B. T. A. 382; *A. T. Evans*, 30 B. T. A. 746.

The instant case is clearly distinguishable on its facts from *Novo Trading Corporation* v. *Commissioner*, 113 Fed. (2d) 320, urged as an authority by petitioners, wherein liquidation of a corporation was held effected so that refunds of import duties were not taxable to it although the certificate of dissolution which had been executed was never filed with the Secretary of State, since in that case at the time in question all the stock certificates had been canceled on the corporation's books and the corporation had completely ceased business activities.

On the facts we hold that the Commissioner did not err in his determination that petitioner was a personal holding company for the year 1937. This disposes of assignment of error (i) adversely to the contention of petitioners. It likewise disposes of assignment of error (j) adversely to petitioners because that assignment of error is based upon the same contention as is made in support of assignment of error (i).

*Issues (g) and (h).*—In the notice of deficiency the Commissioner stated:

The further contention raised in your protest, that you should be allowed a further dividends paid credit (not claimed in your return) on account of assets distributed in complete liquidation, is denied for the reason that Article 27 (f)-1 of Regulations 94 provides that no such credit is allowable in respect of nontaxable distributions.

Petitioners contend that, even if Technicraft could be construed to be a personal holding company, it nevertheless was entitled to a dividends paid credit for amounts distributed at the time of its reorganization to the extent that such distribution represented earned surplus, and that of the amounts distributed in the liquidation of Technicraft not less than $65,814.75 was properly chargeable to earnings and profits accumulated subsequent to February 28, 1913, and that it has overpaid its surtax on undistributed profits for 1937 in the sum of $10,248.87.

As we have already stated, all of Technicraft's assets were transferred in 1937 to the Lane-Wells Co. of Delaware, its sole stockholder, and both parties agree that there was a tax-free reorganization under section 112 (b) (6) of the Revenue Act of 1936. The parties agree that the question in issue depends upon whether subsection (f) of section 27 of the Revenue Act of 1936 [2] is limited by subsection (h) [3] in computing the "dividends paid credit" which is to be deducted under section 355 of the Revenue Act of 1936, as amended by section 1 of the Revenue Act of 1937, from "adjusted net income" to determine the "undistributed adjusted net income" subject to surtax under section 351 of the Revenue Act of 1936, as amended.

In *Credit Alliance Corporation*, 42 B. T. A. 1020, the Board decided a similar question in accordance with the views of petitioners in this case and we now follow that decision. On the issue raised by these assignments of error, the Commissioner's determination was

[2] (f) DISTRIBUTION IN LIQUIDATION.—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid.

[3] (h) NONTAXABLE DISTRIBUTIONS.—If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

in error, but cf. *Centennial Oil Co.* v. *Thomas*, 109 Fed. (2d) 359; certiorari denied, 309 U. S. 690.

From petitioner's exhibit 28, introduced in evidence by agreement between the parties, Technicraft's earned surplus, at the time of its merger with the Lane-Wells Co. of Delaware, August 31, 1937, was $55,660.84 and not $65,814.75 as alleged in its assignment of error. The correct amount of Technicraft's earned surplus transferred to the Lane-Wells Co. of Delaware in the reorganization should be used in a recomputation under Rule 50.

*Issues (e) and (f)*.—Petitioners in assignments of error (e) and (f) contend that the three-year period of limitations contained in section 275 (a) of the Revenue Act of 1934 has run for the years 1934 and 1935. The facts show that on March 15, 1935, and March 16, 1936, respectively, Technicraft filed its corporation income and excess profits tax returns on Form 1120 for the calendar years 1934 and 1935, respectively. These returns appear to be full and complete, aside from some minor adjustments which the Commissioner made in his determination of the deficiencies. Technicraft answered "No" to the following question appearing on the face of both returns:

Is the Corporation a personal holding company within the meaning of Section 351 of the Revenue Act of 1934?—(If so, an additional return on Form 1120H must be filed.)

Technicraft did not file any returns on Form 1120 H because, in good faith, it did not believe it was a personal holding company.

The respondent's deficiency notice is dated June 1, 1939, which is over four years and two months after the 1934 return was filed on Form 1120 and over three years and two months after the 1935 return was filed on Form 1120. He contends that the statute never commenced to run, for the sole and only reason that no returns were filed on Form 1120 H, and relies upon section 276 (a) of the Revenue Act of 1934, which provides that in the case "of a failure to file a return the tax may be assessed * * * at any time."

Section 275 (a) of the Revenue Act of 1934 provides that the tax imposed by Title I "shall be assessed within three years after the return was filed * * *." Section 351 (c) provides:

(c) ADMINISTRATIVE PROVISIONS.—All provisions of law (including penalties) applicable in respect of the taxes imposed by Title I of this Act, shall insofar as not inconsistent with this section, be applicable in respect of the tax imposed by this section, except that the provisions of section 131 of that title shall not be applicable.

Article 351-8 of Regulations 86, promulgated under the Revenue Act of 1934, in so far as is material, provides:

ART. 351-8. *Return and payment of tax.*—A separate return is required for the surtax imposed under section 351. Such return shall be made on Form 1120H. * * * The same provisions of law relating to the period of limita-

tion for assessment and collection which govern the taxes imposed by Title I also apply to the surtax imposed under Title IA. However, since the surtax imposed under Title IA is a distinct and separate tax from those imposed under Title I, the making of a return under Title I will not start the period of limitation for assessment of the surtax imposed by Title IA. If the corporation subject to section 351 fails to make a return, the tax may be assessed at any time. * * * The administrative provisions applicable to the surtax imposed by section 351 are not confined to those contained in Title I but embrace all administrative provisions of law which have any application to income taxes.

The returns filed on Form 1120 were made under Title I.

Petitioner, in support of its contention that the statute has run, relies upon *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304. In that case a trustee in charge of a certain fund filed a return as a trust on Form 1041. After the statute had run for assessing an additional tax against the trust, the Commissioner determined that the fund was an association taxable as a corporation and that, since no return had been filed on Form 1120 as an association taxable as a corporation, as required by section 52 of the Revenue Act of 1932 and article 391 of Regulations 77, he was not barred from assessing the determined deficiency against the trustee in charge of the fund. The Supreme Court held that the return on Form 1041 was a return within the meaning of section 275 (a) of the Revenue Act of 1932, and that the proposed deficiency in that case was barred by the statute of limitations. Among other things, the Court said:

The respondent's contention is that where a fiduciary, in good faith, makes what it deems the appropriate return, which discloses all of the data from which the tax, treated as one imposed upon an association (classified as a corporation under the statute), can be computed, such a return is to be deemed no return. We think this view inadmissible.

It cannot be said that the petitioner, whether treated as a corporation or not, made no return of the tax imposed by the statute. Its return may have been incomplete in that it failed to compute a tax, but this defect falls short of rendering it no return whatever.

At the conclusion of the foregoing language the Court in a footnote cited the following cases: *Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172; *Commissioner* v. *Stetson & Ellison Co.*, 43 Fed. (2d) 553; *United States* v. *Tillinghast*, 69 Fed. (2d) 718; *Abraham Werbelovsky*, 8 B. T. A. 442; *Estate of F. M. Stearns*, 16 B. T. A. 889; *J. R. Brewer*, 17 B. T. A. 704.

We think the instant case is distinguishable from the *Germantown Trust Co.* case, *supra*. In that case both the returns on Form 1041 and 1120 dealt with in the opinion were what might be properly termed Title I returns. The tax involved was a Title I income tax. In the instant case the tax involved is a Title IA tax. Treasury Regulations 86, article 351–8, above quoted, states:

* * * However, since the surtax imposed under Title IA is a distinct and separate tax from those imposed under Title I, the making of a return

under Title I will not start the period of limitation for assessment of the surtax imposed under Title IA.

Is the above regulation a valid one? We think it is. In *Blenheim Co., Ltd.*, 42 B. T. A. 1248, we held that the taxpayer was liable for a delinquency penalty of 25 percent in income tax deficiency for failure to file a return on Form 1120 for the normal income tax, although it had filed a return on Form 1120 H as a personal holding company. In that case, among other things, we said: "Clearly, the normal and surtax here in dispute are separate and distinct taxes. Revenue Act of 1934, Title I, Title I–A  \*  \*  \*."

In *Will County Title Co.*, 38 B. T. A. 1396, the Commissioner determined a deficiency in income tax for 1934 and an overassessment of excess profits tax greater than the amount of the deficiency in income tax, thus making a net overassessment of the two taxes. On these facts we held that the petition for redetermination was within our jurisdiction in so far as it pertained to the deficiency in income tax, but not as to the overassessment in excess profits tax. We based our decision upon the fact that "the two taxes are imposed by entirely separate provisions of the statute", the income tax by Title I and the excess profits tax by Title V, and are separate and distinct taxes. To the same effect is *Hobbs Western Co.*, 43 B. T. A. 5.

If the question of our jurisdiction is determined under certain circumstances by the character of the tax, then it is difficult to see how a return filed on Form 1120 under Title I of the Revenue Act of 1934 would start the running of the statute of limitations as to a separate and distinct tax imposed by Title IA of the Revenue Act of 1934, where no return has been filed by the taxpayer on Form 1120 H, as required by the Treasury regulations. The two returns are quite different, as pointed out by us in *Blenheim Co., Ltd., supra*.

We, therefore, hold that, since Technicraft did not file personal holding company returns on Form 1120 H, the statute of limitations has not run and the deficiencies in personal holding company surtax for the years 1934 and 1935 are not barred by the statute of limitations.

*Issues* (c) *and* (d).—In the notice of deficiency the Commissioner added a 25 percent penalty for each year as "mandatory" under section 291 of the Revenue Act of 1934, section 406 of the Revenue Act of 1935, and section 291 of the Revenue Act of 1936, for failure to file a personal holding company return.

Petitioners contend that this was error and that, although no personal holding company returns were filed on Form 1120 H, the returns filed contained all the necessary data to enable the Commissioner to compute petitioners' liability for personal holding company surtax. In making this contention, petitioners also rely on *Germantown Trust Co., supra*, above discussed in connection with the statute of limita-

tions issue. We think our discussion under the statute of limitations issue is equally applicable here.

In the Board's recent decision in *Olean Times Publishing Co.*, 42 B. T. A. 1277, among other things, we said:

Petitioner filed no personal holding company return, and hence the penalty of 25 percent imposed by the Revenue Act of 1936, section 291, is mandatory. Reasonable cause is only effective to avoid the penalty if the return is delayed—not when the return is omitted entirely, *Alex Holmstrom*, 35 B. T. A. 1092; dismissed, 94 Fed. (2d) 747; *National Contracting Co.* v. *Commissioner*, 105 Fed. (2d) 488. This is true as to a personal holding company return even though an income tax return has been filed, *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630; *Rotorite Corporation*, 40 B. T. A. 1304 (on review C. C. A., 7th Cir.) ; *Lone Pine Lawn Corporation*, 41 B. T. A. 638 (on review C. C. A., 2d Cir.).

On the issue as to delinquency penalties, we sustain the Commissioner. See *Noteman* v. *Welch*, 108 Fed. (2d) 206.

*Issue* (*k*).—Petitioners do not press issue (k) in their brief and it will be considered as abandoned. This assignment of error raised the issue that the Commissioner was estopped by his past acts and conduct from asserting any claim of liability against Technicraft for surtax on personal holding company or penalties thereon. Even if the issue be not considered as abandoned, it is clear that the evidence in the record does not sustain it. There is nothing to show that the Commissioner is estopped.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN, dissenting: I believe this case is controlled by the decision of the Supreme Court in *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304.