Virginia Loan & Thrift Corporation v. Commissioner.
Virginia Loan & Thrift Corp. v. Commissioner
Docket Nos. 109821, 109822.
United States Tax Court
1943 Tax Ct. Memo LEXIS 311; 2 T.C.M. (CCH) 27; T.C.M. (RIA) 43226; May 10, 1943
*311 Robert J. Heberle, Esq., State-Planters Bank Bldg., Richmond, Va., for the petitioner. E. M. Woolf, Esq., for the respondent. TURNER Memorandum Opinion TURNER, Judge: The respondent has determined deficiencies in personal holding company surtax and penalties against the petitioner as follows: Docket
No.
Year
Surtax
Penalty
109821
1935
$ 341.56
$ 85.39
109822
1938
569.54
142.39
109822
1939
1,657.44
414.36
109822
1940
1,428.23
357.06
The questions presented are (1) whether 80 per cent of the petitioner's income consisted of interest classified as personal holding company income; (2) whether the petitioner is liable for any delinquency penalties; and (3) whether section 182 of the Revenue Act of 1942 applies to the petitioner. The case was submitted on a stipulation of facts and the facts are found as stipulated. [The Facts] The petitioner filed its income tax returns for the calendar years 1935, 1938, 1939 and 1940 with the Collector of Internal Revenue at Richmond, Virginia. The petitioner was organized in the State of Virginia in 1926 under the Industrial Loan Associations Act of 1920 as amended (Sections 4168(1)-4168(11) of the Code of Virginia). *312 The petitioner is subject to the supervision of the State Banking Department and is regularly examined by a state bank examiner. Its certificate of incorporation, to the extent material, reads as follows: This is to certify that we do hereby associate ourselves to establish a corporation under and by virtue of Chapters 147 and 148 of the Code of Virginia, 1919, and the acts amendatory thereof and supplementary thereto, for the purposes and under the corporate name hereinafter mentioned, and to that end we do by this, our certificate, set forth as follows: I. NAME. The name of the corporation is to be the Virginia Loan & Thrift Corporation. II. PRINCIPAL OFFICE. The principal office of the corporation is to be at Winchester, Frederick, Virginia. III. PURPOSES. The purposes for which this corporation is formed are: (a) To lend money to any person, firm or corporation, to be repaid in periodical installments or otherwise, upon the applications of such persons, firms or corporations, unsecured or secured by deed of trust, pledge or lien on property, real and personal. (b) To buy, sell and negotiate notes, [*] and other obligations for the payment of money, and to guarantee the *313 payment thereof. (c) To make such charges for loans and for services for investigation of credit in connection therewith as shall be proper and not prohibited by law. (d) To subscribe to, purchase or otherwise acquire, and to own, hold, sell and to guarantee or become surety in respect to the stock, bonds or other securities and obligations of other companies or corporations, and while the owner of any such securities to exercise all of the incidents of ownership, including the right to vote thereon. (e) To have all the powers conferred by Chapter 74 of the Acts of the General Assembly of Virginia, 1920, relating to Industrial Loan Associations, to do and to perform any and all acts and things necessary or convenient in carrying on the business of a loan and investment corporation, and in addition thereto to exercise all the general powers conferred upon corporations under the provisions of Chapter 147 and 148 of the Code of Virginia, 1919. (f) To purchase or otherwise acquire and to hold, reissue and sell shares of its own capital stock and to lend or advance money thereon. During the taxable years the petitioner's stock was owned by from 29 to 38 individuals, but more than *314 50 per cent in value of its capital stock was owned by not more than 5 individuals under the rule of constructive ownership. The petitioner lends money on co-maker notes and on collateral notes. It had about one thousand loans outstanding in the taxable years, of which about 90 per cent were for amounts of less than $300. All loans bear interest payable in advance, at the rate of 6 per cent per annum. If a loan is paid prior to maturity, the interest charge is proportionately reduced. In addition to the interest charge, the petitioner charges 2 per cent of the amount of a loan as a statutory investigation fee. This fee is charged regardless of the length of time of the loan, and is payable in advance. The full fee is collected whether the loan is paid prior to maturity or not, as it is not based on units of time. The petitioner has always separated its income from investigation fees from other income in its profit and loss statements. The reports of the bank examiner divide the petitioner's income into "Income from loans and investments" and "Other earnings." The investigation fees are included as "Other earnings." The petitioner received income during the taxable years as follows: *315 Interest
Income
Including
Investi-
Investi-
Total
gation
gation
Other
Gross
Year
Fees
Fees
Income
Income
1935
$15,808.82
$4,625.35
$15,808.82
1938
13,438.82
4,459.65
$619.34
14,058.16
1939
13,956.40
4,416.82
538.05
14,494.45
1940
16,552.20
5,047.97
123.70
16,675.90
The petitioner duly filed returns of its income for each of the taxable years on Form 1120. It did not for any of the years file a personal holding company return. It prepared its own income tax return for the year 1935, and did not believe it was a personal holding company. For the years 1938, 1939 and 1940, the petitioner's books were audited by certified public accountants who were instructed to prepare all necessary tax returns. The accountants did not think that the petitioner was a personal holding company and therefore prepared no returns on Form 1120H. No stockholder owning directly or indirectly as much as 10 percent of the outstanding stock owed petitioner as much as $5,000 at any time during any of the taxable years. The petitioner is authorized to sell certificates of investment or similar obligations. At the close of the years 1938, 1939 and 1940 the *316 petitioner owed to banks on its notes the following amounts: 1938
$7,000
1939
None
1940
14,000
At the close of the years 1938, 1939 and 1940 the petitioner's notes, bearing interest at 5 percent and maturing in six months from their date, were issued and held as follows: 1938
1939
1940
R. M. Swimley, Trustee
$6,000
$6,000
$6,000
R. M. Swimley
4,000
Gladys Haldeman
1,500
1,000
1,000
Elizabeth Swimley
1,500
Nan D. Sheets
1,000
1,000
1,000
Irene V. Hodgson
3,000
3,000
3,000
Clark M. Smith
2,000
1,500
Susan Saulsbury
500
Total
$13,000
$13,000
$17,000 These notes were held and renewed as investments by the respective holders. During each of the years the petitioner paid semi-annual dividends to its stockholders and was financially able to retire its six-month notes had the holders thereof desired that action. The interest and investigation fees charged by the petitioner are controlled by section 4168(6) of the Code of Virginia. That section provides: Such associations may charge in advance the legal rate of interest upon the entire amount of the loan, and such loans may be repaid in weekly, monthly or other periodical installments, *317 with the privilege to the association to declare the entire unpaid balance due and payable in the event of default in the payment of any instalment for a period of thirty days, and may also charge an investigation fee not exceeding two per centum of the amount of the loan. At the hearing the petitioner, through its counsel, admitted that there was no particular investigation made for which an "investigation fee," as allowed by the Virginia statute, was collected from the borrower. In other words, the charge was made as in the case of the admitted interest charge as a part of the borrower's cost of the loan. [Opinion] If the so-called investigation fee is personal holding company income, more than 80 per centum of the petitioner's gross income for each of the taxable years was personal holding company income, and on the first issue the respondent must be sustained. This question has been decided adversely to the petitioner in numerous cases and those cases are controlling here. Seaboard Small Loan Corporation, 42 B.T.A. 715; Girard Investment Co. v. Commissioner, 122 Fed. (2d) 843; Seaboard Loan & Savings Association, Inc., 45 B.T.A. 510. *318 The respondent is also sustained as to the addition to tax for failure of the petitioner to file personal holding company returns. O'Sullivan Rubber Co. v. Commissioner, 120 Fed. (2d) 845, affirming 42 B.T.A. 721; Lone Pine Lawn Corporation v. Helvering, 121 Fed. (2d) 935, affirming 41 B.T.A. 638; Lane-Wells Co., 43 B.T.A. 463, and Seaboard Loan & Savings Association, Inc., supra. We have not overlooked the reversal of Lane-Wells Co., 128 Fed. (2d) 739, by the United States Circuit Court of Appeals for the Ninth Circuit, but by reason of the cases previously cited, we respectfully decline to accept the reversal in the Lane-Wells Co. case as controlling. Section 182 of the Revenue Act of 1942, supra, amends section 501(b) of the Internal Revenue Code to exempt corporations such as the petitioner from the personal holding company tax and further provides that on election of such taxpayer the exemption may retroactively apply for the years 1939 and 1940. The petitioner *319 has so elected and the conclusions expressed above are not to be applicable to the years 1939 and 1940. Decisions will be entered under Rule 50.